Marvin SCUTCHINGS, Jr., Appellant,

v.

UNITED STATES, Appellee.

No. 84–1524.

District of Columbia Court of Appeals.
Argued April 8, 1986.
Decided May 27, 1986.

Allie Sheffield, Public Defender Service, with whom James Klein, and Mark Carlin, Public Defender Service, Washington, D.C., were on brief, for appellant.

Ann K.H. Simon, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., and Michael W. Farrell, Thomas J. Tourish, Jr., and Donald Allison, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before PRYOR, Chief Judge, NEWMAN, Associate Judge, and PAIR, Senior Judge.

PAIR, Senior Judge:

Appellant was charged with and convicted on one count of assault with intent to kill while armed,[1] two counts of assault with a dangerous weapon,[2] and one count of obstruction of justice.[3] On appeal, he challenges his conviction for obstruction of justice on two grounds.[4] First, he alleges that he was convicted of an offense different from the one for which he was indicted. Second, he alleges that the statute under which he was indicted was repealed. Finding merit in the first argument, we reverse appellant's conviction for obstruction of justice.

The government's evidence at trial established that around Thanksgiving of 1982, Michael Dobbins, the complaining witness, and appellant independently attended a party at their girlfriends' home. Dobbins and a friend, Oatha Flythe, left the party approximately one-half hour before appellant. Appellant was robbed shortly after the party. Suspecting Dobbins and Flythe had set him up for the robbery, appellant swore vengence. Accompanied by two men, appellant returned to his girlfriend's apart-ment to find out where Dobbins and Flythe lived. His girlfriend, Peebles, directed him to Flythe's apartment which was two stories directly below her own. From a window, Peebles and Dobbins' girlfriend then witnessed one of the men with appellant fire shots into Flythe's apartment.

The day after these incidents, Michael Dobbins received a call from appellant. Appellant, stating his belief that Dobbins and Flythe had set him up to be robbed, threatened to kill them both. Dobbins denied any involvement in the robbery. The entire phone call was overheard on an extension by Dobbin's mother, Patricia Dobbins. After the exchange, Patricia Dobbins, knowing that Peebles was pregnant, told appellant to think about his girlfriend and the baby. Appellant replied he did not care about that and he was just going to "get" Michael Dobbins and his friend.

On December 28, 1982, at 11:30 p.m., Dobbins was accompanying Oatha Flythe's aunt to a nearby convenience store when he was intercepted by an acquaintance, Eddie Black. Black warned Dobbins that he had seen appellant and two associates in the vicinity. While they were speaking, however, shots rang out; Dobbins, Flythe, and Black were unharmed by the bullets. Black was able to identify under a streetlight the assailants as appellant and the two unknown men he had seen earlier with appellant. Dobbins could only recognize a baseball hat worn by one of his assailants, which he had seen appellant wearing earlier.

On January 11, 1983, the day that Patricia Dobbins was scheduled to testify before the grand jury investigating the incidents, appellant's girlfriend phoned her and asked if she would speak to appellant on the phone. Dobbins agreed, and appellant called. At trial, she testified that "he told [her] that no one—he had no intention of

1. D.C. Code § 22–501 (1981), § 22–3202 (1981 & 1985 Supp.).

2. D.C. Code § 22–502 (1981).

3. D.C. Code § 22–722 (1985 Supp.). See discussion *infra* p. 639.

4. Appellant does not challenge his other convictions.

really hurting Michael, and that he wanted [her] to drop the charges. He also asked [her] how much it would cost to drop the charges against him." At grand jury, however, Patricia Dobbins' testimony was that appellant had said, " 'I want you to stop all this, drop it. I'm not going to do anything to Michael.... I think that we can settle this without going to court....' " She testified further that, "He said he believed Michael had set him up but now he knew Michael didn't." [5]

Appellant presented an alibi defense to all three assault charges and a general denial defense to the obstruction of justice charge.[6]

On appeal, appellant contends that the evidence adduced at trial constructively amended the obstruction of justice charge. To determine the substance of this contention, we review, not only the evidence, but also the pleadings, the opening statement, the closing argument and the trial court instructions. Our review of the record leads us to conclude that a constructive amendment of the indictment, requiring reversal, occurred.

■ The Grand Jury Clause of the Fifth Amendment reads: "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." An indictment, as charging instrument, offers three protections to the accused. First, it must apprise the accused of the charges against him so that he may adequately prepare his defense, and second, it must describe the crime with sufficient specificity to enable him to protect against future jeopardy of the same offense. *Gaither v. United States*, 134 U.S.App.D.C. 154, 159, 413 F.2d 1061, 1071 (1969); *United States v. Miller*, —— U.S. ——, 105 S.Ct. 1811, 1814, 85 L.Ed.2d 99 (1985); *see also United States v. Bradford*, 482 A.2d 430, 433 (D.C.1984). In addition to these notice-related concerns, the right of indictment by grand jury af-

fords a third safeguard. By guaranteeing the right to be tried only on charges made by the indictment, the clause also protects against oppressive actions of the prosecutor or a court, who may alter the charge to fit the proof. *Gaither, supra,* 134 U.S. App.D.C. at 159, 413 F.2d at 1061. The prohibition precludes the possibility that the defendant could be convicted on the basis of facts not found by, or presented to, the grand jury which indicted him. *See Russell v. United States,* 369 U.S. 749, 770, 82 S.Ct. 1038, 1050, 8 L.Ed.2d 240 (1962).

The law recognizes two types of departures from the original indictment:

> An *amendment* of the indictment occurs when the charging terms of the indictment are altered, either literally or in effect, by prosecutor or court after the grand jury has last passed upon them. A *variance* occurs when the charging terms of the indictment are left unaltered, but the evidence at trial proves facts materially different from those alleged in the indictment.

*Gaither v. United States, supra,* 134 U.S. App.D.C. at 164, 413 F.2d at 1071 (emphasis in original; footnotes omitted) (quoted in *Giles v. United States,* 472 A.2d 881, 883 (D.C.1984)). Exemplifying a literal amendment because the trial court struck the name of an involved party when evidence at trial failed to prove his involvement, *Ex parte Bain,* 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887), established the proposition that an indictment, once returned, cannot be broadened or materially altered except by the grand jury itself.

■ In *Stirone v. United States,* 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960), the Supreme Court elaborated on this concept by articulating the doctrine of constructive amendment. In *Stirone,* the defendant was charged with an offense with two essential elements: (1) interference with commerce, and (2) extortion. Although the grand jury charged appellant with extortion which interfered with the

---

**5.** The grand jury testimony was admitted during cross-examination.

**6.** In his opening statement, appellant's counsel asserted that appellant never made the phone call or obstructed justice in any way.

interstate transportation of *sand,* the government presented evidence that the defendant had *also* interfered with the interstate transportation of *steel.* The trial court instructed the jury that defendant could be convicted for *either* offense. Without inquiring into prejudice, the Supreme Court reversed the conviction:

> While there was a variance in the sense of a variation between pleading and proof, that variation here destroyed the defendant's substantial right to be tried only on charges presented in an incident returned by a grand jury.

*Id.* at 217. A variance becomes a constructive amendment, then, when "facts introduced at trial go to an essential element of the offense charged, and the facts are different from the facts that would support the offense charged in the indictment." *Giles, supra,* 472 A.2d at 883.[7]

■ More recently, in *United States v. Miller, supra,* the Supreme Court distinguished between an indictment alleging an offense different or broader from that established at trial and an indictment alleging means of committing the offense different from those established at trial. The former, it held, constituted an impermissible variance. Miller was charged with defrauding his insurer both by consenting to a burglary and by lying to the insurer about the value of his loss. While only the latter allegation was proved at trial, the court held it sufficient to sustain a conviction. In other words, to successfully resist an attack, a conviction must be based on an offense proved at trial and fully alleged in the indictment. *See Miller, supra,* 105 S.Ct. at 1816.[8]

■ With regard to amendments which infringe on a constitutional right to grand jury indictment, the Supreme Court has adopted a *per se* reversal rule. *See Ex parte Bain, supra,* 121 U.S. at 1; *Barker v. United States,* 373 A.2d 1215, 1218 (D.C. 1977). A variance, on the other hand, implicates notice and double jeopardy guarantees and will not require reversal of conviction without a showing of prejudice. *See Gaither, supra,* 134 U.S.App.D.C. at 165, 413 F.2d at 1072. A case by case analysis is therefore required when variance is alleged. *See Ingram v. United States,* 392 A.2d 505, 507 (D.C.1978). In the absence of a timely objection to the variance, the burden is on the appellant to show actual prejudice. *Jackson v. United States,* 123 U.S.App.D.C. 276, 280 & n. 3, 359 F.2d 260, 264 & n. 3, *cert. denied,* 385 U.S. 877, 87 S.Ct. 157, 17 L.Ed.2d 104 (1966). Because we find this case to be one of constructive amendment, however, we need not address the issue of prejudice.[9]

In this case, the grand jury indictment charged:

> On or about January 13, 1983, within the District of Columbia, Marvin Scutchings, Jr., and a person whose identity is unknown to the Grand jury corruptly endeavored by threats and force to influence, intimidate, and impede *Michael Dobbins* in the discharge of his duties as a witness in the case of *United States v. Marvin Scutchings, Jr.,* Criminal Case Number F–0139–83, then pending in the Superior Court of the District of Columbia (Obstructing Justice, in violation of 22 D.C. Code, Section 703). [Emphasis added.]

---

**7.** Language in *Giles, supra,* suggests that variance in *both* the evidence *and* the jury instructions is required for a finding of constructive amendment. 472 A.2d at 883; *see also United States v. Gonzales,* 661 F.2d 488, 492 (5th Cir. 1981). We reject this articulation of the principle as exceedingly narrow and inaccurate. *See Stirone v. United States, supra,* 361 U.S. at 217; *United States v. Crocker,* 568 F.2d 1049, 1057–60 (3d Cir.1977); *United States v. Figueroa,* 666 F.2d 1375, 1378–80 (11th Cir.1982); *United States v. Davis,* 461 F.2d 83, 90–91 (5th Cir.), *cert. denied,* 409 U.S. 921, 93 S.Ct. 250, 34 L.Ed.2d 180 (1972).

**8.** By allowing an indictment to be narrowed, *Miller, supra,* modified the holding of *Bain, supra,* 121 U.S. at 1, 7 S.Ct. at 781. See *supra* p. 636.

**9.** Without specifying grounds for objections, appellant's counsel objected to the obstruction of justice charge at trial. In moving for a judgment of acquittal soon thereafter, counsel specified that she objected on the basis that a grand jury is not an investigator of the District of Columbia government—the second basis for appeal. See discussion *infra* p. 639.

The prosecutor, in his opening statement, paraphrased the indictment accurately as alleging that *Michael* Dobbins was the complainant in the obstruction of justice count. In setting forth the evidence in his opening statement, however, he told the jury that *Patricia* Dobbins would testify that on the morning she was to testify before the grand jury, appellant telephoned her and asked her to drop the case against him. In his closing argument, the prosecutor urged the jury to find appellant guilty of obstructing justice for attempting to persuade Patricia Dobbins not to testify against him in the grand jury:

Ladies and gentlemen, we submit to you that phone call, that attempt to prevent—to talk Ms. Dobbins out of coming down here and going through with this case, constitutes an attempt to obstruct justice.

We ask you to find Mr. Scutchings guilty of ... on the 11th of January, 1983, attempting to obstruct justice in trying to talk Ms. Dobbins out of coming down here and pursuing this case.

Nevertheless, the trial court, in issuing its jury instructions, recited the indictment as presented and stated:

The essential elements of the offense of obstructing justice, each of which the Government must prove beyond a reasonable doubt, are two:

First, that the defendant endeavored by means of bribery, threats or force, or intimidation, to obstruct, delay or prevent the communication to an investigation—an investigating grand jury of the District of Columbia government by the complainant;

Second, that the Defendant acted with the specific intent to obstruct or impede the due administration of justice.

We are persuaded that the evidence and the jury instructions in this case

raised the " 'substantial likelihood that [appellant] may have been convicted of a crime different from that charged by the grand jury." *Barker v. United States, supra,* 373 A.2d at 1219 (quoting *United States v. Somers,* 496 F.2d 723, *cert. denied,* 419 U.S. 832, 95 S.Ct. 56, 42 L.Ed.2d 58 (1974)). Testimony at trial established, not that appellant had threatened Michael Dobbins— as alleged in the indictment—but that he had attempted to bribe Patricia Dobbins. Variances, therefore, occurred in not only the means of committing the offense but also the party involved.[10] The evidence concerning the party was underscored by the prosecutor who argued to the jury that appellant's phone call constituted an effort to dissuade Patricia Dobbins, not Michael, from testifying and pursuing the case. With regard to the manner of commission, the trial court constructively amended the indictment. Despite retaining the original language of the indictment referring to Michael, the trial court incorporated a means not alleged, but adduced at trial— bribery—into its instructions. Where, as in this case, a grand jury specifically charges essential elements of a crime, such as means and party, and the government, bolstered by the trial court's instructions, proves entirely different elements, the disparities constitute a constructive amendment of an indictment. *See United States v. Crocker, supra,* 568 F.2d at 1049 (indictment charged appellant had perjured himself by denying he had received money from one party; evidence at trial showed he received money from another); *United States v. Figueroa, supra,* 666 F.2d at 1375 (indictment charged attempted hijacking by force or violence; evidence showed only use of threats and intimidation); *United States v. Salinas,* 654 F.2d 319 (5th Cir.1981) (indictment charged aiding and abetting one named bank officer; evidence showed and instructions permitted convic-

---

10. It is conceivable that had a variance occurred in naming the party alone, sufficient evidence would have been presented to have rendered the variance harmless. *See McBride v. United States,* 393 A.2d 123, 130 (D.C.1978), *cert. denied,* 440 U.S. 927, 99 S.Ct. 1260, 59 L.Ed.2d 482

(1979) ("The statute [D.C. Code § 22–703] does not require that obstructing statements be directly addressed to the allegedly intimidated witness...."). The evidence in this case, however, fails to establish even a threat. In conjunction, then, the two variances become fatal.

tion for aiding and abetting a different officer).

We distinguish this case from *Jackson v. United States*, on which the government relies. In *Jackson*, the appellant was charged with robbery by force and violence, yet the evidence established robbery by stealthy seizure or snatching. The trial court instructed the jury they could find appellant guilty of robbery on either basis. *Id.* at 280, 359 F.2d at 264. Stressing that no objection was made at trial, the court held that no constructive amendment occurred because, unlike in *Stirone*, the prosecution in *Jackson* was not relying "on a complex of facts distinctly different from that set forth in the indictment." In this case, no single set of facts was relied on by both the grand jury and the trial jury because Patricia Dobbins' testimony at trial conflicted with her grand jury testimony. Accordingly, new facts supporting an obstruction of justice charge distinct from those charged by the grand jury were presented to the trial jury. We are therefore unable to say with certainty on which set the jury relied in reaching its verdict of guilty. Because of the likelihood that appellant was convicted on a charge other than one for which the grand jury indicted him, we reverse his conviction for obstruction of justice.

■ We find no merit, however, in appellant's argument that the indictment was fatally defective because appellant was charged under an obstruction of justice statute repealed three weeks prior to the alleged commission of the act. The indictment incorrectly cited D.C. Code § 22–703 (repealed December 1, 1982). The statute, however, was replaced with § 22–722 which proscribes not only the same, but a broader range of conduct. Unlike the former statute, § 22–722 proscribes attempts to influence a witness not to cooperate with the grand jury. *See Stoney v. United States*, 494 A.2d 1303, 1304 n. 1 (D.C.1985). Appellant committed the crime during the period when the latter statute was in effect. Hence, the provisions of the latter statute encompass his acts and the trial court accurately applied the current law to the facts. Accordingly, we find this miscitation amounts to a technical defect and find no prejudice. *See State v. Donato*, 414 A.2d 797, 804 (R.I.1980).

*Reversed.*