Samuel J. JOINER, Appellant,

v.

UNITED STATES, Appellee.

No. 89–301.

District of Columbia Court of Appeals.

Argued Oct. 18, 1990.
Decided Jan. 22, 1991.

Robert E. Sanders, Washington, D.C., appointed by the court, for appellant.

Sherri L. Evans, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher and Silvia L. Gonzalez, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before BELSON, SCHWELB and WAGNER, Associate Judges.

BELSON, Associate Judge:

Appellant Samuel Joiner challenges his convictions on seven counts of assault with a dangerous weapon in violation of D.C. Code § 22-502 (1989) and two counts of threatening to injure the person of another in violation of D.C.Code § 22-2307 (1989). On appeal, he contends (1) the seven assault convictions merge and constitute one offense, (2) the evidence is insufficient to sustain his conviction for threatening to injure Luis Lopez, and (3) his act of threatening two individuals constitutes only one offense. We remand to the trial court for the dismissal of six of appellant's convictions for assault with a dangerous weapon, but affirm the conviction of both counts of making threats. Because the trial court failed to impose legal sentences for the violations of the felony threats statute, D.C.Code § 22-2307, we remand for resentencing on those counts.

## I.

At approximately 9:30 p.m. on January 20, 1987, Gustavo Landaverde, Luis Lopez and Rafael Diaz, employed by the Suchiko Restaurant at 2309 Wisconsin Ave., N.W., went out the back door of the restaurant to investigate the sound of breaking glass in the parking lot. After seeing a man later identified as Timothy Entsminger breaking out the windows of parked cars with a wooden board, Diaz attempted to question Entsminger. Entsminger threw the board at Lopez' feet and began to run as Diaz and Lopez chased him. They captured Entsminger and brought him back to the rear of the restaurant where Daisuke Utagawa, Freddie Romero, Yugi Hashimoto and Kenji Saiki (other Suchiko employees) stood nearby or on the backstairs. Appellant Samuel Joiner then appeared and, as he approached the group of men, told them

to let Entsminger go because he had not done anything. Appellant then pulled a gun, fired one shot in the direction of the men, and ran. The police recovered a bullet from a balcony located at 2320 Wisconsin Ave., N.W., across the street from where Joiner fired the shot.

At approximately 11:00 p.m. police apprehended appellant through a description given by some of the victims. Following a show-up identification at the corner of Wisconsin Ave. and W St., N.W., where each of the men identified appellant as the person who fired the shot toward them, the police arrested appellant. Three days later, as Mr. Utagawa and Mr. Lopez drove into the alley near the Suchiko Restaurant, appellant exited a vehicle and approached their truck. He reached inside and pointed to each man, first touching Utagawa's nose and then striking Lopez above the eye, while uttering "I will remember this," "I will get you for this" and "[I don't] forget faces."

## II.

■ Appellant contends, and the government does not contest, that his seven convictions for assault with a dangerous weapon merge and constitute one offense. Specifically, he argues that because he fired a single shot in the direction of the group of seven men, only one assaultive act occurred. We agree.

In *Ladner v. United States*, 358 U.S. 169, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958), the Supreme Court, holding that a single assaultive act directed at two federal officers constituted a single offense, did not find any evidence that Congress intended "to create multiple offenses from a single act affecting more than one federal officer." *Id.* at 178, 79 S.Ct. at 214. Similarly, a defendant is guilty of only one offense if he puts in fear different members of a group towards which collectively he directs his action. *United States v. Alexander,*

152 U.S.App.D.C. 371, 381, 471 F.2d 923, 933 (D.C.), *cert. denied,* 409 U.S. 1044, 93 S.Ct. 541, 34 L.Ed.2d 494 (1972).

Appellant approached the group of seven men in the alley behind the Suchiko Restaurant and told them to let Entsminger go. Appellant then fired one shot toward the group of men and ran out of the alley. The jury convicted appellant on all seven counts of assault with a dangerous weapon and the trial court sentenced him to two consecutive terms of fifteen to forty-five months, the remaining counts to run concurrently.

■ It is clear that appellant committed but one criminal act by firing a single shot toward the men. *See Horton v. United States*, 541 A.2d 604, 612 n. 10 (D.C.1988). Accordingly, six of his convictions merge and all but one of his sentences arising therefrom must be dismissed.[1] We emphasize, however, that the trial court did not err in allowing the seven convictions to stand pending appeal because "[i]nitially permitting convictions on both counts serves the useful purpose of allowing this court to determine whether there is error concerning one of the counts that does not affect the other." *Warrick v. United States*, 528 A.2d 438, 443 (D.C.1987) (quoting *Garris v. United States*, 491 A.2d 511, 514–15 (D.C.1985)), *appeal after remand,* 551 A.2d 1332 (D.C.1988).

## III.

We next address appellant's contention that insufficient evidence existed to prove that he threatened to injure Mr. Lopez in violation of D.C.Code § 22–2307 (1989). Appellant argues that he never communicated the threat to Mr. Lopez because Mr. Lopez could not understand English. Appellant further asserts that even apart from that communication problem, the government failed to prove that the threat

1. Appellant also contended that the trial court erred in denying his motion for judgment of acquittal for assault with a dangerous weapon against Freddie Romero, Yugi Hashimoto and Kenji Saiki. During oral argument, however, both appellant and appellee agreed that this issue is moot because six of the seven convictions merge. Presumably, the one aggravated assault count that survives will not involve any of these three men. We agree and will not address this issue.

was communicated to Mr. Lopez within the District of Columbia. Further, if it is held that appellant did threaten Mr. Lopez, appellant asserts that he directed a single threat to both Mr. Lopez and Mr. Utagawa that constituted one offense. We find all three of these contentions unpersuasive.

■ For the purpose of addressing the first of these arguments, we will assume that it is true that Mr. Lopez could not understand English. We begin by noting that appellant was indicted under the felony threats statute which provides:

> Whoever threatens within the District of Columbia to kidnap any person or to injure the person of another or physically damage the property of any person or of another person, in whole or in part, shall be fined not more than $5,000 or imprisoned not more than 20 years, or both.

D.C.Code § 22–2307 (1989). The government has the burden of proving the utterance of a threat and that it was communicated. The intended victim, however, need not be aware of the threat, for the crime is completed when the threat is communicated to a third party. *Beard v. United States*, 535 A.2d 1373, 1378 (D.C.1988); *accord, United States v. Baish*, 460 A.2d 38, 42 (D.C.1983) (threat must be communicated to someone, either the object of the threat or a third party).

According to evidence adduced by the government, three days after appellant fired the shot toward the group of men in the alley, he returned to the same alley and approached a vehicle driven by Mr. Utagawa. Appellant stuck his hand inside the truck, hit Mr. Lopez in the eye, and stated "[I don't] forget faces." Although Mr. Lopez assumedly did not understand English, Mr. Utagawa heard and fully understood appellant's threat against Mr. Lopez. Because proof that a third party heard and understood the threat establishes a basis for prosecution, *Baish, supra,* 460 A.2d at 43, the government presented sufficient evidence to withstand appellant's motion for judgment of acquittal and to allow the jury

to decide whether appellant communicated the threat against Mr. Lopez to Mr. Utagawa.

■ Appellant's argument that the government failed to prove that the offense of threats was committed within the District of Columbia fails for the same reason. Appellant relies upon the lack of a showing that Mr. Utagawa interpreted the threat for Mr. Lopez in this jurisdiction. But the identity of the place where Mr. Utagawa passed the threat on to Mr. Lopez is immaterial because the crime was complete regardless of whether Mr. Utagawa even told Mr. Lopez about it. There is no dispute that the Wisconsin Avenue locale where the threat was uttered is within the District of Columbia.

Satisfied that sufficient evidence existed to allow the jury to conclude that appellant threatened to injure Mr. Lopez, we next consider whether appellant's threats to Mr. Utagawa and Mr. Lopez constituted a single offense. In *Smith v. United States*, 295 A.2d 60 (D.C.1972), the defendant patted his pocket and spoke the words "I have a gun" in the general direction of a father and son who had been pursuing the defendant. *Id.* at 60. This court found that appellant committed one offense under the misdemeanor threats statute, D.C.Code § 22–507, because he uttered a single threat to both father and son. *Id.* at 61.

■ In this instance, however, appellant approached the passenger side of the truck, reached inside, touched Mr. Utagawa's nose and uttered "I will remember this" and "I'll get you for this." Moreover, he also struck Mr. Lopez above the eye and said "something to the effect that he didn't forget faces." It is clear from these facts that appellant distinctly singled out and focused on each of the two victims while uttering words and physically touching them, one after the other. We conclude accordingly that appellant committed two separate offenses under the felony threats statute.[2]

---

2. We note that the misdemeanor threats statute is worded differently from the felony statute, and that in *Smith, supra,* this court observed

that if the misdemeanor statute contained the words "whoever threatens to do bodily harm to another," (words that are strikingly close to the

We hold, however, that the trial court erred in sentencing appellant pursuant to the misdemeanor threats statute, § 22–507, to two consecutive six month terms when appellant was indicted under the felony threats statute, § 22–2307. Because both the misdemeanor and the felony offenses have identical elements, there would have been no difference in the trial on the issue of guilt or innocence had appellant been charged under the misdemeanor statute. *See Holt v. United States*, 565 A.2d 970 (D.C.1989) (en banc). The felony threats statute provides for a maximum term of twenty years and does not specify a mandatory minimum term. Pursuant to D.C.Code § 24–203(a) the trial judge should have specified a minimum and maximum term.[3]

It follows that appellant's sentence is illegal because it fails to state a mandatory minimum term as required for felony convictions, *see Kerns v. United States*, 551 A.2d 1336 (D.C.1989), and must be corrected pursuant to Super.Ct.Crim.R. 35 which provides that "[t]he Court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time provided herein for the reduction of sentence."

Accordingly, we remand the case to the trial court for dismissal of six of the seven convictions of assault with a deadly weapon. See note 1, *supra*. Additionally, we affirm appellant's two convictions under the felony threats statute, and remand for correction of the illegal sentences imposed on appellant.

*So ordered.*

---

language of the felony threats statute), it would have strengthened the argument that two crimes were committed on the facts in *Smith* even under the misdemeanor statute. *Smith, supra,* 295 A.2d at 61. We need not base our ruling here on nuances of statutory construction, as there were clearly two separate threats in this case under either statutory formulation. We therefore do not reach the question of statutory construction suggested in *Smith*.

**3.** Section 24–203(a) provides in relevant part: [A] person convicted in the District of Columbia of a felony, the justice or judge of the court imposing such sentence shall sentence the person for a maximum period not exceeding the maximum fixed by law, and for a minimum period not exceeding one-third of the maximum sentence imposed, and any person so convicted and sentenced may be released on parole as herein provided at any time after having served the minimum sentence.

D.C.Code § 24–203(a) (1989).