### III.

**In re L.B., Appellant.**

**No. 12–FS–835.**

District of Columbia Court of Appeals.

Submitted June 19, 2013.

Decided Aug. 15, 2013.

---

Fletcher P. Thompson, Crownsville, MD, was on the brief for appellant.

Irvin B. Nathan, Attorney General for the District of Columbia, Todd S. Kim,

Solicitor General, Rosalyn C. Groce, Deputy Solicitor General, and Janice Y. Sheppard, Assistant Attorney General, were on the brief for appellee.

Before GLICKMAN and BLACKBURNE–RIGSBY, Associate Judges, and NEWMAN, Senior Judge.

NEWMAN, Senior Judge:

After a bench trial, L.B. was convicted of making threats to do bodily harm, a violation of D.C.Code § 22–407. In this appeal, L.B. argues that she was found involved of a crime that was not included in the delinquency petition. We agree and reverse.

## I.

By a petition dated February 4, 2012, L.B. was charged with one count of threats to do bodily harm, a violation of D.C.Code § 22–407. The charging document specifically alleged that L.B. "threatened to do bodily harm to Sgt. Bedlion."

Sergeant Bedlion of the Metropolitan Police Department testified to the threats at trial. He explained that he had responded to a domestic violence incident in Northeast D.C. where he encountered a number of bystanders, including L.B. Bedlion told L.B. she could leave the scene, and L.B. responded by saying "I'm going to slap your bitch ass." Bedlion believed the comment was directed at him, and placed L.B. under arrest for making threats. Taking the stand in her own defense, L.B. admitted making the statement, but insisted that it had been actually directed at the boyfriend of the person being arrested in the domestic violence incident (herself a friend of L.B.'s). The boyfriend, L.B. explained, had been standing "behind the officer" when she made the comment.

The trial court summarized the evidence in reaching its verdict, noting that L.B. "acknowledged making the threat" and "acknowledged it was intended as a threat." "The only thing the parties disagree on," the trial court explained, "is who she made the threat against." After explaining the elements of the "offense of threats to do bodily harm," the trial court concluded that L.B. could be adjudged delinquent because "she did intend to threaten the boyfriend." Noting, correctly, that it "doesn't matter whether or not he heard the threat," the trial court convicted L.B.

## II.

■ On appeal, L.B. argues that she was convicted of a crime (threatening the boyfriend) different from the crime with which she was charged (threatening Bedlion). Thus, she explains, her due process right to notice of the "specific charge or factual allegations to be considered at the hearing" was violated. *In re Gault*, 387 U.S. 1, 33–34, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).

■ This court reviews *de novo* any errors of law in a trial court's judgment after a bench trial. *See Brown v. M St. Five, LLC*, 56 A.3d 765, 769 (D.C.2012) (citing D.C.Code § 17–305 and explaining that "[o]n appeal from a bench trial, we review the trial court's legal conclusions *de novo*, but defer to its factual findings if they are supported by the record" (internal citation and quotation marks omitted)); *In re C.J.*, 514 A.2d 460, 463 (D.C.1986) (review of trial court's delinquency finding is pursuant to § 17–305). Accordingly, the trial court's legal conclusion in this case, that appellant could be convicted of the crime charged upon proof that the crime was actually committed against a person not mentioned in the charging document, is subject to *de novo* review.[1]

1. Because L.B.'s counsel elicited L.B.'s testi-    mony that the threat was directed at someone

■ We begin our analysis by noting that, although the formal elements of the crime of "making threats of bodily harm" do not include proof of the victim's identity,[2] this court has often treated the identity of the victim as an element for the purposes of delineating separately chargeable incidents of criminal conduct. In *Adams v. United States*, 466 A.2d 439, 443 n. 3 (D.C.1983), this court declined to merge two convictions, explaining that "[e]ach offense clearly required proof of a fact that the other did not because the offenses were directed against different victims." We have continued to apply this rule, explaining several times that "convictions for crimes involving distinct, identifiable victims do not merge." *Hanna v. United States*, 666 A.2d 845, 854 (D.C. 1995), *see also Snowden v. United States*, 52 A.3d 858, 872 (D.C.2012) (same). Thus, the identity of the victim, although not a formal element of the crime, plays a role analogous to that of an element in our case law. It distinguishes punishable offenses from one another in a single course of conduct.

This rule has been used by this court to identify separately punishable threats in a number of cases. For example, in *Joiner v. United States*, 585 A.2d 176 (D.C.1991), this court upheld two threats convictions, one for each victim. In that case, the defendant stuck his head into a car and touched each victim in sequence while making a series of statements not obviously specifically directed at either. *Id.* at 179. The court, rather than focusing on the words specifically uttered, focused instead on the defendant's conduct in "distinctly singl[ing] out and focus[ing] on each of the two victims while uttering words and physically touching them, one after the other." *Id.* Accordingly, this court did

---

other than Bedlion, and then argued for L.B.'s acquittal on the same theory, we think L.B. presented her appellate theory to the trial court with sufficient clarity to avoid plain error review. Further, we see no opportunity for L.B. to have objected to the trial court's *sua sponte* amendment of the charging petition, which took place as the trial court made its findings after the close of evidence and closing arguments. The government never requested such an amendment (or argued that L.B. could be convicted on the theory the trial court adopted), and L.B. was not given advance notice of the trial court's intentions. Accordingly, we apply our general *de novo* standard of review to a trial court's rulings after a bench trial.

Indeed, these facts also demonstrate why neither Super. Ct. Juv. R. 7(e), nor the statute on which it is based, D.C.Code § 16–2305(e), permit what occurred here. Both the rule and the statute only "permit" a trial court to allow amendments of the petition, and the statute makes it clear that such amendments should only be granted on "the motion of the Corporation Counsel or counsel for the child." No such motion was made here. Even if the trial court was permitted to amend the petition without a motion, both the rule and the statute make it clear that such amendments require "notice" to the parties and, if a party demonstrates a need for it, "additional time to prepare." Neither notice nor the opportunity to request more time was given here. Finally, both the rule and statute only permit amendments "at any time prior to the conclusion of the factfinding hearing." In this case, the amendment took place when the trial court was making its findings, an event that, by rule, occurs "after a factfinding hearing." Super. Ct. Juv. R. 31(a). Accordingly, neither Super. Ct. Juv. R. 7(e), nor cases explaining its function and application, *see In re W.K.*, 323 A.2d 442 (D.C.1974), permit what occurred in this case.

2. "To prove threats to do bodily harm, the government must prove: (1) the defendant uttered words to another person; (2) that the words were of such a nature as to convey fear of bodily harm or injury to the ordinary hearer; and (3) that the defendant intended to utter the words which constituted the threat." *Joiner–Die v. United States*, 899 A.2d 762, 764 (D.C.2006). As the trial court correctly observed, there is no requirement that the intended victim hear the threat. However, that does not cure the deficiency in the charging petition, discussed below.

not merge the threats convictions into a single count. *See also Hunter v. United States*, 980 A.2d 1158, 1163 (D.C.2009) (affirming two convictions for threats where the defendant first "uttered one threat directed at Annie Mae Parker" and then "directed his attention to LaTonya, striking her and uttering a second threat, directed at both victims collectively, as he left the premises").[3]

■ Thus, the crime of threatening Bedlion is a separate offense from the crime of threatening the unidentified boyfriend. Although both crimes require proof of the same elements, the identity of the victim distinguishes them from one another. "Basic to our system of criminal justice is the principle that a charging document must be sufficient to put an accused on notice of the nature of the crime against which he must defend." *In re D.B.H.*, 549 A.2d 351, 352 (D.C.1988). Accordingly, we have rejected juvenile delinquency adjudications based on crimes that were not listed in the charging petition, especially when those petitions gave "no notice of ... [an] essential element" of the crime of conviction. *In re W.B.W.*, 397 A.2d 143, 148 (D.C.1979). We are therefore constrained to reject the adjudication in this case under the same principle. The crime charged in the petition identified the victim as Bedlion, and L.B. had no notice that she could be punished for threats she made against the boyfriend.

■ Although perhaps imperfect, given the absence of an indictment from juvenile proceedings, we are further persuaded that reversal is required in this case by analogy to this court's "variance" and "constructive amendment" jurisprudence. "A variance occurs when the facts proved at trial materially differ from the facts contained in the indictment but the essential elements of the offense are the same." *Peay v. United States*, 924 A.2d 1023, 1027 (D.C.2007) (internal citation and quotation marks omitted). However, "[a] variance becomes a constructive amendment ... when facts introduced at trial go to an essential element of the offense charged, and the facts are different from the facts that would support the offense charged in the indictment, or when the possible bases for conviction have somehow been broadened." *Zacarias v. United States*, 884 A.2d 83, 87 (D.C.2005) (internal citation and quotation marks omitted). In cases involving crimes against persons (a category that includes assault and threats to do bodily harm), this court has often deemed a change in the identity of the victim to be a "constructive amendment" meriting reversal.

For example, in *Long v. United States*, 687 A.2d 1331 (D.C.1996), this court found an impermissible constructive amendment where the government had initially indicted the defendant with committing three counts of assault with intent to commit robbery. *Id.* at 1345. Each count speci-

---

**3.** Analogously, this court has suggested that "a continuous stream of threats against a single person in a single brief encounter would coalesce into a single threats offense rather than constitute separate multiple offenses—much as a succession of physical blows in a continuing attack on a single victim is treated as a single assault in our cases." *Williams v. United States*, 981 A.2d 1224, 1227 n. 8 (D.C.2009). And while it is true that a single threat directed "at an undifferentiated group of victims," *Hunter*, 980 A.2d at

1163, will result in only one conviction, regardless of the number of victims in the group, this rule has not prevented the court from examining a defendant's conduct closely in cases where multiple victims are present to determine whether the defendant committed separate crimes against each victim specifically. *Cf. Snowden*, 52 A.3d at 874 (defendant who " 'mov[ed]' his gun between 'different people' " in a group committed four separate assaults over course of single incident).

fied that the defendant had assaulted a named victim with intent to rob that same victim (*e.g.* assault on A with intent to rob A, assault on B with intent to rob B, assault on C with intent to rob C). *Id.* However, at trial, the government's proof established that the defendant had assaulted two of the victims with the intent to rob the third victim (*e.g.* assault on A and B with intent to rob C). *Id.* Although the defendant "properly could have been indicted" for assaulting the two victims with intent to rob the third, this court noted that "those were not the offenses the grand jury charged." *Id.* Accordingly, this court ordered the two charges reduced to properly charged crime of "assault with a dangerous weapon." *Id.* at 1346.

In a similar case, *Joseph v. United States,* 597 A.2d 14 (D.C.1991), this court found an impermissible constructive amendment of the indictment in a case where the defendant was charged with assault with intent to kill while armed. The court noted that the indictment charged assault on a victim with the intent to kill the same victim. *Id.* at 17. However, at trial, the government proved that the defendant assaulted one victim with the specific intent to kill someone else. *Id.* at 18. The court deemed this an impermissible constructive amendment of the indictment, and the government avoided reversal only because the defendant had been convicted of a lesser included charge which did not require proof of intent to kill. *Id.* at 18–19.

In both *Long* and *Joseph,* the government's proof established the elements of the crime charged in the indictment. What it did not establish in either case, however, was proof of the identity of the victim named in the indictment. Like threats to do bodily harm, the victim's identity is not a formal "element" of either of assault with intent to commit robbery or assault with intent to kill while armed. *See* D.C.Code § 22–401, *Perry v. United States,* 36 A.3d 799, 810–11 (D.C.2011) (crimes listed in D.C.Code § 22–401 include elements of common law assault plus intent to accomplish the specific act listed); *Lopez v. United States,* 30 A.3d 190 (D.C. 2011) (victim's identity not an element of simple assault under D.C.Code § 22–404(a)). However, because the government changed its theories of the identity of the victim between the time of the indictments and the time of the trials, this court found constructive amendments of the indictments. In both cases, this court would have reversed but for a conviction on a properly indicted lesser-included offense.[4]

Here, the trial court's ruling accomplished a similar "constructive amendment" of the charges against L.B. Rather than convicting L.B. on threats against Bedlion, as alleged in the petition, the trial court found her guilty of uttering threats against the boyfriend. Like in *Long* and *Joseph,* L.B. was convicted of a crime listed in the document that charged her. However, like *Long* and *Joseph,* that conviction rested on the substitution of an

---

4. In a footnote to *Scutchings v. United States,* 509 A.2d 634, 638 n. 10 (D.C.1986), we suggested that it was "conceivable that had a variance occurred in naming the [victim] alone, sufficient evidence would have been presented to have rendered the variance harmless." *Scutchings* predates this court's decisions in *Long* and *Joseph,* where the only variance presented was in the name of the victim. This court's subsequent treatment of *Scutchings* shows that the hypothetical offered in the footnote has since been considered and rejected. *See, e.g. Long,* 687 A.2d at 1345 (describing *Scutchings* in parenthetical as a case where "indictment charged obstruction of justice as to one witness; proof at trial concerned a different witness."); *Joseph,* 597 A.2d at 17 ("Our decision in *Scutchings,* moreover, makes clear that, for the purpose of determining whether there has been a constructive amendment, the identity of the victim is an 'essential element.' ").

uncharged victim for the charged victim. Accordingly, analogy to those cases suggests that L.B.'s conviction should be reversed.

*So ordered.*

GLICKMAN, Associate Judge, dissenting:

I would affirm the adjudication of delinquency. I doubt that L.B. preserved her claim that she was convicted of a crime different from the one with which she was charged. She did not object to the variance between the trial judge's findings and the petition with respect to the identity of the person whom she had threatened. But even if L.B.'s claim in this court is not subject to the rigors of plain error review (as the government contends), I think it should be rejected because L.B. sustained no cognizable prejudice as a result of the variance.

The standard for evaluating prejudice in this case is found in Superior Court Juvenile Rule 7(e). Under Rule 7(e), any claim of a variance between a petition and the proof at trial is curable by amending the information to conform to the proof "if no additional or different offense is charged and if substantial rights of the respondent are not prejudiced."[1] These conditions were satisfied here. The trial judge did not find L.B. guilty of an "additional or different offense" merely because he found that someone other than Bedlion was the target of her threat.[2] The target's identity is not an element of the offense of threats to do bodily harm, and the evidence at trial unquestionably supported the judge's finding that L.B. committed that offense.[3] Nor did the variance prejudice L.B.'s "substantial rights" in any way. The primary purposes of a petition, like those of any charging document, are to give the respondent notice of the charge against her and afford her adequate time to prepare her defense.[4] Those purposes were achieved here. In some cases the identity of the target of a threat may make a material difference, as where it distinguishes one separately chargeable threat incident from another. But that is not so in this case. There was only one incident and one alleged threat, and L.B. was under no illusion as to what exactly those were. L.B. claims she "would not have waived her Fifth Amendment right against self-incrimination by testifying" had she understood it made no legal difference that her threatening utterance was aimed at her

1. Super. Ct. Juv. R. (7)(e). *Cf.* Super. Ct. Crim. R. 7(e); *see generally* Wright & Leipold, Federal Practice and Procedure: Criminal 4th § 129 (2008).

2. *See In re W.K.*, 323 A.2d 442, 445 (D.C. 1974) ("A change in the name of the victim is not tantamount to charging a new offense."). The respondent in *W.K.* was charged with robbing a restaurant. We held it "clearly within the trial court's discretion" to permit the government to amend the petition pursuant to Juvenile Rule 7(e) so as to substitute a different victim in one of the counts. *Id.*

3. The majority opinion cites *Long v. United States*, 687 A.2d 1331 (D.C.1996), and *Joseph v. United States*, 597 A.2d 14 (D.C.1991), for the proposition that a deviation in the proof at trial with respect to the identity of the victim

named in an indictment may effect a constructive amendment necessitating reversal (at least where an objection is preserved). These cases are inapposite, because L.B. was charged by petition, not indictment, and the Fifth Amendment right to have felony charges in criminal prosecutions determined by a grand jury is not implicated here.

4. *See, e.g., Dyson v. United States*, 485 A.2d 194, 196 (D.C.1984). The petition also may serve to protect the respondent from being placed in double jeopardy by "spell[ing] out the offense clearly enough to enable the accused to plead the judgment as a bar to a subsequent prosecution for the same crime." *Id.* (quoting *Horowitz v. District of Columbia*, 291 A.2d 202, 203 (D.C.1972)). There is no double jeopardy concern in this case.

friend's boyfriend rather than at Bedlion.[5] That may be, but she could not reasonably have thought her testimony exculpatory. More important, L.B. has not shown she would have had a valid defense or a greater chance of securing an acquittal had the petition not named Bedlion as the target of her threat (or had she not testified). To underscore this point, at a new trial on remand with an amended petition that does not name the target, would not a finding of guilt be inevitable?

Because I think the variance of which L.B. complains was not prejudicial, I respectfully dissent.

---

5.   Brief for Appellant at 7.