Harry J. BENNETT, Appellant,

v.

UNITED STATES, Appellee.

No. 10110.

District of Columbia Court of Appeals.

Argued Dec. 1, 1976.

Decided June 20, 1977.

Karen E. Moore, Public Defender Service, Washington, D. C., for appellant.

Larry C. Willey, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry and William D. Pease, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before FICKLING,[*] NEBEKER and YEAGLEY, Associate Judges.

YEAGLEY, Associate Judge:

Appellant Harry Bennett was convicted of second-degree murder (D.C.Code 1973, § 22–2403) and possession of a prohibited weapon (D.C.Code 1973, § 22–3214(a)). He challenges his convictions on the grounds that (1) the trial court improperly admitted hearsay testimony of a witness regarding an alleged threat made by appellant to the deceased; and (2) certain remarks by the prosecutor in his closing argument to the jury prejudiced his right to a fair trial. Finding no error, we affirm.

[*] Associate Judge Fickling was a member of this division at the time the case was argued, but died before the entry of this opinion.

1. Shortly after being placed under arrest, Bennett gave a signed statement to the police admitting that he shot Green. At trial, after the

Briefly, the government's evidence established that the defendant was seen by a neighbor on the day of the homicide going into his house armed with a shotgun. As he went inside Bennett stated: "If you see him come in and he don't come out, you know what happened." Later that day, the witness saw the victim, Lawrence Green, enter appellant's house. Five minutes later, he heard a shot and observed appellant come outside to talk to two other men who had been waiting for Green in a parked car in front of Bennett's house. The two men immediately got out of the car and left, and appellant was heard to say: "If those two dudes had come in, they would have got killed too." The neighbor further testified that he went to the Bennett house later that night and assisted appellant in putting decedent's body in the trunk of Green's car. The car was found three days later parked at Howard University.

Appellant admitted the killing[1] but claimed that he shot Lawrence Green in self-defense. He testified that on the day of the shooting he received a phone call at work that his sister Beverly had been beaten near their home by an unidentified person because of her involvement in a "numbers bet," and that the same person had threatened to return with a gun and "shoot the joint up if he didn't get his money." Bennett learned that Green had committed the assault when he returned home and spoke with his sister about the incident. He claimed that Green came to his house shortly thereafter armed with a revolver, and that he shot and killed him in self-defense.

In support of his self-defense claim appellant presented evidence that the deceased had a reputation for violence and that he, Bennett, was aware of such reputation at the time of the shooting. There was also

confession had been admitted into evidence, appellant testified that the statement was substantially accurate but that it did not contain the additional fact that Green had displayed his gun at one point in the encounter.

testimony indicating that the violent confrontation between the two men was the culmination of bad feelings stemming from Lawrence Green's relationship with appellant's sister.

The hearsay declarations involved in the instant appeal arose in the following manner. The defense called Green's sister who testified that her brother had dated Beverly Bennett for some time, and that at one point appellant had prohibited Green from coming over to his house to visit his sister after he learned that Green had struck her during an argument. The witness also testified during direct examination that Green had told her that "he would probable have to fight [Bennett] or [Bennett] would shoot him." Defense counsel was permitted to impeach the witness with respect to this declaration on the ground that she had given a prior inconsistent statement to the police which included the additional phrase "or he would have to shoot Beverly's brother." During cross-examination, the prosecution attempted to elicit further testimony about possible threats, but defense counsel objected on the grounds that such testimony would be incompetent and hearsay. The objection was overruled and the prosecutor pressed for clarification about the threats.

Q. At the time of this incident, Beverly Bennett [appellant's sister] was living with you, is that not correct?

A. Right.

Q. And the reason why she was living with you was because Lawrence was not able to go over to Harry Bennett's house because Harry had said that he would kill him if he came over?

A. Right.

On redirect, the defense established that the witness had not actually heard the threats:

Q. Now, you testified about that . . . you testified that Mr. Harry Bennett threatened your brother?

A. Yes.

Q. Did you hear him threaten your brother?

A. Did I hear Harry threaten him?

Q. Yes.

A. No, I didn't.

Q. You did not. Somebody told you about it?

A. My brother said it and Beverly said it.

Q. Your brother said it—

A. And Beverly said it.

Thereafter, defense counsel moved for a mistrial and to strike the testimony elicited during the cross-examination on the ground that it constituted inadmissible hearsay. Both motions were denied.

I.

Appellant first contends that the trial court erroneously admitted the cross-examination testimony of Green's sister. He argues that it was error to admit testimony referring to extrajudicial statements by either Green or Bennett's sister as evidence of Green's state of mind. The jury, he contends, would not consider such declarations as reflecting on the victim's mental state but rather as substantive evidence that he had actually threatened to kill Green. Appellant further argues that the testimony was so prejudicial that it would not have been cured by a limiting instruction to the jury.

In considering appellant's contentions, it is necessary to discuss briefly a few general principles with respect to the admissibility of declarations which are offered to prove the mental state of a deceased victim.

As a general rule, antecedent declarations that a homicide victim feared the defendant are considered relevant to the defendant's claim that he acted in self-defense, that is, that the deceased was the aggressor in the first instance. *See, e. g., People v. Lew,* 68 Cal.2d 774, 69 Cal.Rptr. 102, 441 P.2d 942 (1968); *People v. Finch,* 213 Cal.App.2d 752, 29 Cal.Rptr. 420 (1963); *People v. Atchley,* 53 Cal.2d 160, 346 P.2d 764 (1959), *appeal dismissed,* 366 U.S. 207, 81 S.Ct. 1051, 6 L.Ed.2d 233 (1961); *Wadley v. State,* 553 P.2d 520 (Okl.Cr.1976). The admissibility of such statements "must be determined by a careful balancing of their

probative value against their prejudicial effect." *United States v. Brown,* 160 U.S. App.D.C. 190, 198, 490 F.2d 758, 766 (1974). These statements fall within two general categories. Normally, they take the form of direct evidence of the victim's mental state such as the declaration, "I am afraid of D." Such statements are considered hearsay if offered to prove the truth of their contents. However, they are generally admissible under the present state of mind exception to the hearsay rule.

■ A second class of extrajudicial declarations are those which are only circumstantially probative of the victim's state of mind. For example, a statement by the decedent that "D threatened to kill me" is treated as circumstantial evidence of the victim's fear of D. Technically, such statements are not being offered to prove the truth of what was said, but merely to circumstantially show the decedent's state of mind toward the defendant, and hence the hearsay rule is not applicable. We view the challenged declarations in the present case as fitting into this latter category. The admissibility problem presented by such declarations is that they invariably involve extraneous factual elements which carry a risk that a declaration will be considered by the jury not only as circumstantial evidence of the speaker's mental state, but also for the truth of the matters asserted therein. As a result, many courts have recognized that such declarations, although admissible, must thereafter be limited in use by instructing the jury to confine its consideration of the statement to whatever probative value it has on the declarant's state of mind rather than to the truthfulness of the statement's allegations, explicit or implied. *See United States v. Brown, supra; People v. Lew, supra; People v. Hamilton,* 55 Cal.2d 881, 13 Cal.Rptr. 649, 362 P.2d 473 (1961), *overruled on other grounds,* 1 Cal.3d 431, 82 Cal.Rptr. 494, 462 P.2d 22 (1970); *State v. Kump,* 76 Wyo. 273, 301 P.2d 808 (1956).

■ In the great majority of cases, a limiting instruction will be sufficient to minimize the danger of jury misuse. However, a cautionary instruction may be inadequate where the prejudice resulting from jury misapplication far outweighs the probative value of the declaration. In such situations, it may be simply unrealistic to believe that the refined distinctions demanded by the instruction can be faithfully maintained by any jury. *See Shepard v. United States,* 290 U.S. 96, 54 S.Ct. 22, 78 L.Ed. 196 (1933); *People v. Hamilton, supra; People v. Talle,* 111 Cal.App.2d 650, 245 P.2d 633 (1952).

Such is the essence of appellant's argument with respect to the challenged testimony in the instant case. He contends that the statements by the victim's sister "so poisoned the minds of the jurors" that not even a limiting instruction could have prevented them from using such testimony as substantive evidence that the defendant threatened to kill Lawrence Green. We do not agree.

■ Viewing the evidence in a light most favorable to the government, *Matthews v. United States,* D.C.App., 335 A.2d 251 (1975), we are not persuaded that the prejudice which may have resulted from jury misapplication of the declarations in question outweighed their probative value. Even assuming that the jury erroneously considered the testimony as substantive evidence of threats by the defendant, the resulting prejudice was minimal in light of the government's earlier proof of Bennett's confession and his two inculpatory statements to his neighbor on the day of the homicide. The government's evidence of guilt, when viewed without reference to possible threats by the accused, was sufficient for the jury to reasonably reject Bennett's claim that he acted in self-defense.

■ We also conclude that the challenged declarations should have been accompanied by a limiting instruction. However, defense counsel never requested that the trial court admonish the jury not to consider the declarations as substantive evidence of threats by the defendant. In the absence of a request for a cautionary instruction as required by Super.Ct.Cr.R. 30, a failure of the trial court sua sponte to give

such an instruction is not a ground for reversal unless amounting to "plain error or defects affecting substantial rights" of the accused. Super.Ct.Cr.R. 52(b); *Watts v. United States,* D.C.App., 362 A.2d 706 (1976) (en banc); *Massey v. United States,* D.C.App., 320 A.2d 296 (1974); *Dixon v. United States,* D.C.App., 287 A.2d 89, *cert. denied,* 407 U.S. 926, 92 S.Ct. 2474, 32 L.Ed.2d 813 (1976). If it appeared that the jury might be inclined to misuse the declarations in the instant case, it was incumbent upon defense counsel to draw that possibility to the trial judge's attention. Since it would have been quite reasonable for defense counsel to have concluded that he might better avoid the focusing of further attention on the testimony, we cannot exclude the possibility that trial tactics played a part in his failing to request a limiting instruction. In the absence of a reasoned objection, we perceive no error in the trial court's admission of the testimony without sua sponte instructing the jury as to its limited admissibility.

## II.

Appellant Bennett also challenges his conviction on the ground that the government committed five separate errors in its closing argument to the jury.[2]

■ In reviewing instances of prosecutorial misconduct, alleged errors must rise to the level of "substantial prejudice" in order to justify reversal. *Garris v. United States,* D.C.App., 295 A.2d 510 (1972); *Cross v. United States,* 122 U.S.App.D.C. 283, 353 F.2d 454 (1965). To determine whether such misconduct caused substantial prejudice, the applicable test is:

[W]hether we can say, "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." The decisive factors are the closeness of the case, the centrality of the issue affected by the error, and the steps taken to mitigate the effects of the error. [*Smith v. United States,* D.C.App., 315 A.2d 163, 166, *cert. denied,* 419 U.S. 896, 95 S.Ct. 174, 42 L.Ed.2d 139 (1974), *quoting Gaither v. United States,* 134 U.S. App.D.C. 154, 172, 413 F.2d 1061, 1079 (1969).]

In applying this formulation, "[i]t is generally held that whether improper conduct of Government counsel amounts to prejudicial error depends, in good part, on the relative strength of the Government's evidence of guilt." *Smith v. United States, supra* at 167; *Jones v. United States,* 119 U.S.App.D.C. 213, 338 F.2d 553 (1964).

■ We have carefully examined the challenged remarks in light of appellant's arguments and we are not persuaded that the defendant was prejudiced such that the judgment was "substantially swayed by the error." *Smith v. United States, supra.*

*Affirmed.*

---

2. Briefly, appellant contends that (1) the prosecutor appealed to the passion and prejudice of the jury by suggesting that life meant "almost nothing" to Bennett because he had been in the military and served in Vietnam, and by implying that the defense had "conned" the jury into acquitting the defendant. In this connection, appellant also objects to a prosecution metaphor describing him as an "undertaker . . . throwing the dirt" on the body of the deceased, and to a description of his actions in disposing of decedent's body as being analogous to a "cover up"; (2) the government improperly commented on appellant's prior conviction for armed robbery by stating: "Despite all the soap that was used to wash Harry Bennett, he was convicted of armed robbery, a conviction far greater than anything Lawrence Green was convicted of"; (3) the prosecutor improperly speculated on the reasons for the defense not calling a witness; (4) the government misled the jury regarding the admissibility of the victim's arrest record by stating that "no robbery charges were ever brought against Lawrence Green. In fact, if charges had been brought, you would have heard about it"; and (5) the prosecutor improperly treated testimony concerning threats by the defendant as substantive evidence.