Eugene F. BYRD, Appellant,

v.

UNITED STATES, Appellee.

No. 84–941.

District of Columbia Court of Appeals.

Argued Nov. 19, 1985.

Decided Dec. 18, 1985.

Richard S. Stolker, Rockville, Md., appointed by this court, for appellant.

Paul L. Colby, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., and Michael W. Farrell, Thomas J. Tourish, Jr., and Bruce Z. Marshack, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before NEBEKER and TERRY, Associate Judges, and GALLAGHER, Senior Judge.

TERRY, Associate Judge:

Appellant was convicted of armed robbery [1] and obstruction of justice.[2] On appeal he contends that the trial court erred in denying his motion to sever the two offenses for trial and his motion to suppress the identification testimony of the robbery victim. We reject both contentions and affirm the judgment of conviction.

I

A small neighborhood grocery was robbed at gunpoint. Mrs. Hee Sun Kang,

1. D.C.Code §§ 22–2901 (1981), 22–3202 (1985 Supp.).

2. D.C.Code § 22–722(a)(3) (1985 Supp.).

who owned the store along with her husband, was making change for a customer, Kelvin Waller, when two men came into the store. One of them held a gun on Mrs. Kang, while the other climbed over the counter and removed all the money from the cash register. After they left, Mrs. Kang called her husband, who was more fluent in English than she was,[3] and he in turn called the police. When the police arrived, Mrs. Kang gave them a description of the two robbers.

About a week later, appellant stopped Kelvin Waller on the street and asked if he had been a witness to the robbery. Waller recognized appellant as the older brother of a neighbor, Robbie Byrd. He told appellant that he had been a witness, but that he did not know who the robbers were. Appellant replied, "Don't act stupid. You know who robbed the store.... You know I robbed the store.... You got to go to court for it, don't say you know who did it, act like you don't know who did it." Appellant warned Waller that if he were to testify against him, "something might happen to [him]." Waller did not report this conversation to anyone for several weeks because he was afraid. Finally, however, he told a detective about it and said that appellant's nickname was "Blue." The detective showed him a series of color slides, and Waller picked out appellant's picture as that of "Blue."

Acting on this information and on Mrs. Kang's description of the robbers, the police arrested appellant and placed him in a lineup. Mrs. Kang, viewing that lineup, identified appellant as the robber who had vaulted the counter and taken the money. She also identified appellant in court as the robber, and Mr. Waller identified appellant as the man who had accosted him on the street.

## II

Appellant wisely refrains from arguing that the armed robbery and obstruction of

3. Mrs. Kang, a native of Korea who had been in the United States for only three years, testified

justice counts were improperly joined in the indictment. He also concedes that evidence of the robbery would be admissible in a separate trial for obstruction of justice. He contends only that because the evidence of his conversation with Waller (which was the basis of the obstruction charge) would not have been admissible in a separate trial for robbery, the two counts should have been severed. The argument is frivolous.

In deciding whether to grant a motion to sever, the trial court "must balance the possibility of prejudice to the [defendant] against the legitimate probative force of the evidence and the interest in judicial economy." *Bittle v. United States*, 410 A.2d 1383, 1386 (D.C.1980) (citations omitted). There can be no prejudice, however, if evidence of each offense is admissible in a separate trial for the other. *Bell v. United States*, 332 A.2d 351, 353 (D.C. 1975); *accord, Bittle v. United States, supra*, 410 A.2d at 1386. Appellant's conversation with Waller would be admissible on at least two grounds in a separate trial on the armed robbery charge. First, it is probative of appellant's consciousness of guilt and is thus admissible as an admission against interest. *See Proctor v. United States*, 381 A.2d 249, 251 (D.C.1977) (citing cases); *Smith v. United States*, 312 A.2d 781, 784–785 (D.C.1973). Second, and more obviously, the statement "You know I robbed the store" is directly probative of appellant's identity as one of the robbers, and hence admissible under a recognized exception to the prohibition against evidence of other crimes. *Drew v. United States*, 118 U.S.App.D.C. 11, 16, 331 F.2d 85, 90 (1964); *see Smith v. United States, supra*, 312 A.2d at 785.

We hold, therefore, that the trial court committed no error in refusing to sever the two counts.

## III

At the suppression hearing, the court asked appellant's counsel:

through an interpreter.

[A]m I correct in inferring from what's been said that you are not really contending that there was undue suggestivity in this lineup; you're really relying upon the totality of the circumstances as showing that there is a substantial risk of irreparable misidentification?

Counsel replied, "Yes, Your Honor, that's correct." Now on appeal, represented by different counsel, appellant argues that the lineup was suggestive. Such an argument in these circumstances is improper. Appellant is bound by the position his counsel took below and may not now recant it (unless he demonstrates that his counsel was ineffective, which he cannot do on this record). "Parties may not assert one theory at trial and another theory on appeal." *Hackes v. Hackes,* 446 A.2d 396, 398 (D.C. 1982) (citation omitted).

■ In any event, we are satisfied that there was no suggestivity in the lineup procedure. Appellant does not argue that the lineup itself was suggestive.[4] Rather, he contends that because Mrs. Kang may have been told before viewing the lineup that there would be one suspect in the line, her identification was irreparably tainted. Actually, the record does not fully support the premise of the argument. When asked at trial whether she had been told that she was "going to be seeing only one person in that lineup," she replied, "I don't remember."[5] A moment later she referred to a conversation between her husband and a translator, and added, "I believe someone said then that they would put one at a time." Even if it were true that someone told her this, such information would not make the lineup procedure impermissibly suggestive. *See Towles v. United States,* 428 A.2d 836, 845 (D.C.1981); *United States v. Gambrill,* 146 U.S.App.D.C. 72,

75 n. 3, 449 F.2d 1148, 1151 n. 3 (1971). It would affect only the weight of the identification testimony, not its admissibility. *Hampton v. United States,* 318 A.2d 598, 601 (D.C.1974).

■ Moreover, Mrs. Kang's testimony makes clear that her lineup identification was based on her recollection of the robber's appearance, not on anything she might have been told by the police. She testified that when she first walked into the lineup room, she "spotted" appellant in the lineup (he was wearing shield No. 8) and recognized him as the robber who came over the counter. Then, and only then, she looked at the others in the line in an effort to find the other robber:

> After I first identified a person [appellant], I was looking for the second person who was the gunman. At that point, I looked at all the people.

She concluded that the man wearing shield No. 3 bore a resemblance to the gunman, but that he was not the gunman. At trial she testified that she was "ninety-nine percent sure" of her lineup identification. She said she was not "a hundred percent sure" because appellant's moustache at the lineup was somewhat fuller than it had been at the time of the robbery and because his hairstyle and clothing were different. Nevertheless, she was firm in her identification of appellant and withstood vigorous cross-examination. On this record, we are fully persuaded that even if there had been some undue suggestivity in the lineup procedure (which the record does not establish), there would be no ground for reversal.

Appellant's conviction is therefore

*Affirmed.*

> I was told there may not be any person.... There may not be any one of the robbers.... I was told there may be two robbers; may not be any of the robbers; there may be even police officers in the lineup. That is what I was told.

---

4. The motions judge, after viewing a photograph of the lineup, found it not to be suggestive and explained in some detail the basis of his finding. Appellant does not challenge that ruling on appeal.

5. At the pre-trial suppression hearing, Mrs. Kang denied having been told that there was going to be a single suspect in the lineup: