UNITED STATES of America, Appellee,

v.

Herman LAWTON, Jr., Appellant.

No. 92–3194.

United States Court of Appeals,
District of Columbia Circuit.

Argued May 17, 1993.

Decided June 15, 1993.

Stephen C. Leckar, Washington, DC (appointed by the court) argued the cause and filed the brief for appellant.

Peter V. Taylor, Asst. U.S. Atty., Washington, DC, argued the cause for appellee. With him on the brief were Jay B. Stephens, U.S. Atty. at the time the brief was filed, John R. Fisher, Roy W. McLeese, III, and Roger W. Burke, Jr., Asst. U.S. Attys., Washington, DC.

Before: WALD, HENDERSON, and RANDOLPH, Circuit Judges.

Opinion for the court filed by Circuit Judge RANDOLPH.

RANDOLPH, Circuit Judge:

Through its jury instructions the district court impermissibly expanded the indictment. As a result the jury could have convicted the defendant for conduct not charged in the indictment and, in one respect, for conduct not criminal under the statute the defendant was charged with violating. Although the defendant did not object to the instructions on the grounds urged in this appeal, we reverse for plain error.

I

From 1977 until July 1989, Herman Lawton, Jr. served as president of Local 2426 of the American Federation of State, County and Municipal Employees ("AFSCME"). All nineteen counts of the indictment returned against him in April 1991 related to Lawton's

actions while he held that position. One count charged Lawton with mail fraud in violation of 18 U.S.C. § 1341; fifteen counts charged him with embezzlement from a labor union of which he was an officer, *see* 29 U.S.C. § 501(c); three counts charged forgery in violation of 18 U.S.C. § 513(a). After a six-day trial, the jury found Lawton guilty of seven of the embezzlement counts and acquitted him of the remaining charges.

Union dues of Local 2426 members were deducted from their wages by their employer, the D.C. Chapter of the American Red Cross. Under the terms of the AFSCME International constitution, the funds thus collected were to be apportioned among the three levels of the AFSCME hierarchy: Local 2426; District Council 20; and the International. After each pay period, the Red Cross sent a check representing the amount of dues to the District Council, which then remitted to the Local and the International their "per capita" shares. (The Local's share was about twenty percent.) This practice ceased in April 1987, when Lawton persuaded the Red Cross to give the dues checks directly to him. Lawton deposited the dues checks into the Local's bank account. At about this time, the Local stopped making per capita payments to the District Council. A year later, the Local also ceased making payments to the International.

The International's bylaws required the signatures of two local officers on each check drawn on a local's account. Local 2426 authorized its president and its secretary/treasurer to sign its checks. In early 1984, Harriet Reed, the Local's secretary/treasurer, had curtailed her union activities in order to care for her son, who had contracted a terminal illness. (She retained her title, however.) Thereafter, Lawton began tracing Reed's name onto checks drawn on the Local's account. Reed testified that she had not given Lawton permission to reproduce her name; Lawton testified that she was aware of and had approved his practice.

The embezzlement counts related to checks written on the Local account after July 1988. The government contended that Lawton's improper use of Local funds actually began at least as early as his decision to obtain dues checks directly from the Red Cross in 1987. An International auditor testified that two of every three checks written on the Local's account after this date were payable to Lawton. Seven of the embezzlement counts related to Local checks Lawton had written to himself. In addition, Lawton wrote checks from the Local's account to cover such personal obligations as his car and boat loans (which spawned three embezzlement counts each), a personal line of bank credit (one count) and the monthly rent on his apartment (one count). The mail fraud charge sprang from a check on the Local's account Lawton drew and mailed to the District of Columbia Superior Court to cover a friend's delinquent child support obligations. The forgery counts related to Lawton's practice of signing Reed's name on the Local's checks. The indictment alleged that Lawton wrote checks on the Local's account to cover personal debts totalling $6,649.03. A Department of Labor investigator testified at trial that his examination of the Local's bank records had uncovered an additional $63,397.50 in funds he believed Lawton had misappropriated directly for his own use during a forty-three month period.

In July 1989, the International removed Lawton as Local president and placed Local 2426 under an administratorship. The Local was later dissolved.

Lawton's principal defense was that the Local had authorized him to pay himself a monthly salary from its account when sufficient funds were available. Several years into Lawton's tenure as president, he assumed the additional duties of "business representative," and the Local voted to give him a monthly stipend of fifty dollars. However, Lawton claimed that in 1985, in recognition of the substantial time and resources he was then devoting to his union duties, the Local voted to raise his salary to $600–$1,000 a month, plus expenses, a raise put into effect the following year. The defense presented several witnesses who testified they were aware of, or had participated in, the Local's decision to raise Lawton's compensation. Other union members and officers, testifying for the government, denied any knowledge of such an arrangement. The minutes of the

Local's meetings did not reflect any discussions about increasing Lawton's monthly allowance. Lawton relied upon a June 1988 letter signed by Alquinston Ross, then recording secretary of the Local, which confirmed that Lawton's monthly salary was $700–$1,000. Ross testified that Lawton had prepared the letter. She denied having any personal knowledge of the truth of its contents; her denial appeared to contradict her grand jury testimony.

Lawton testified that the membership of the Local had decided to raise his salary substantially after he lost his job at the Red Cross in 1986 and was left without any source of income. He explained that he sometimes wrote checks on the Local's account to cover his personal obligations because the Local frequently delayed reimbursing him for out-of-pocket expenses. He said Harriet Reed had approved this practice. According to Lawton, he paid himself his salary and reimbursements only as the Local's funds allowed, as a result of which the Local consistently owed him money. For example, he testified that fiscal year 1988 began with the Local owing him $5,400 and ended with the Local in debt to him for $16,000; by his reckoning, some $7,000 was still due him at the time of trial. Lawton further claimed that he maintained detailed records regarding the checks he wrote to himself from the Local's account, with running totals of the outstanding amount of reimbursements and allowances due him, and that these records were fully available to the Local board and membership. Lawton stated that he ceased per capita payments to the District Council, and later the International, with the assent of the Local because he had discovered, after an investigation, that each body had "misappropriated" a significant amount of money actually due the Local. On cross-examination, Lawton admitted that he reported none of the money he received from the Local on his 1986, 1988, or 1989 federal income tax returns, and only $820 traceable

to the Local on his 1987 return. He claimed that the money he received did not constitute taxable income.

The jury convicted Lawton of the embezzlement counts relating to the Local checks he wrote to cover his car and boat loan payments and his personal credit line, and acquitted him of all other charges. The district court sentenced Lawton to concurrent six-month prison terms for each of the seven counts of conviction, followed by a three-year term of supervised release.

## II

▮ Of Lawton's several arguments, we need consider only the one resting on the Fifth Amendment's command that "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury...." Under the Grand Jury Clause, "a court cannot permit a defendant to be tried on charges that are not made in the indictment against him." *Stirone v. United States,* 361 U.S. 212, 217, 80 S.Ct. 270, 273, 4 L.Ed.2d 252 (1960). Otherwise, the indictment cannot serve its critical function of giving defendants fair notice of the charges they must defend. *See United States v. Sayan,* 968 F.2d 55, 59 (D.C.Cir.1992). In this case the grand jury charged Lawton with illegal conduct of one sort while the petit jury, in conformity to the trial court's instructions, assessed his guilt of other charges. What occurred amounted to a constructive amendment of the indictment and, for that reason, his convictions must be reversed. *See Stirone,* 361 U.S. at 217, 80 S.Ct. at 273; *United States v. Leichtnam,* 948 F.2d 370, 379–81 (7th Cir.1991); *United States v. Harrill,* 877 F.2d 341, 344 (5th Cir.1989); *United States v. Adams,* 778 F.2d 1117, 1124 (5th Cir.1985).

The embezzlement charges in the indictment were confined to Lawton's taking of the Local's money.[1] This is understandable giv-

1. At the head of the list of specific embezzlement counts, the indictment contained the following general allegation:
   On or about the dates listed below for each Count, within the District of Columbia, the defendant HERMAN LAWTON, JR. while an

officer of Local Union 2426, a labor organization engaged in an industry affecting commerce, did embezzle, steal and unlawfully and willfully abstract and convert to his own use the moneys, funds, securities, property and

en Lawton's position as president of the Local. The federal labor embezzlement statute, 29 U.S.C. § 501(c), makes criminal only the embezzlement of the funds of a labor organization of which the defendant "is an officer, or by which he is employed, directly or indirectly." During the relevant period, Lawton was not an officer or an employee of the International; his relationship with the District Council was never clearly established at trial.[2]

The district court, however, instructed the jury that it could convict Lawton of embezzling the Local's funds, or the District Council's funds, or the International's funds. In defining the conversion element of embezzlement, the court told the jury that it must find:

> Third, that at or about the time charged, the defendant, Herman Lawton, Jr., embezzled, stole, abstracted or converted to his own use or the use of another the money and property of Local 2426, or the money and property of the District Council 20, or the International held by the Local 2426, as alleged;

On the fraudulent intent element of embezzlement, the court gave a similar instruction:

> And fourth, that the defendant Herman Lawton, Jr., acted knowingly, willfully, unlawfully, and with fraudulent intent to deprive Local 2426 of its money and property, or the money and property of the District Council 20, or the International held by Local 2426.

When the court elaborated on the fraudulent intent element, it repeated the same message:

> other assets of the said labor organization in the amount as specified below....
>
> \* \* \* \* \* \*
>
> (In violation of Title 29, United States Code, Section 501(c))

2. It appears that Lawton worked as a staff member at the District Council during at least part of the time period covered by the embezzlement counts. The District Council apparently hired Lawton sometime after his discharge by the Red Cross.

3. Lawton's counsel unsuccessfully attempted to place the ownership issue before the jury. The

As to the fourth proposition ... [t]he government must prove beyond a reasonable doubt with respect to these charges, [that] the defendant acted with fraudulent intent to deprive Local 2426, Council 20, and the International of union funds.

The trial court thought that the Local's bank account held funds, in proportionate shares, belonging to the three AFSCME bodies, each of which could therefore have been a victim of Lawton's embezzlement. After the first day of deliberations, the court responded to a jury question with a supplemental instruction on the issue whether Lawton had been authorized to draw the checks. Again the court emphasized that the jury could convict Lawton for embezzlement from the District Council or the International. The court told the jury:

> Each branch of AFSCME, Local 2426, District Council 20, and the International Union had a share of the funds in Local Union 2426's account. The defendant claims that he was authorized to draw checks against their accounts. The question is did he have the authorization by the three branches whose funds were involved.
>
> So the ultimate question is did Local Union 2426 authorize withdrawal of its funds? Did District Council 20 authorize a withdrawal of its funds? Did the International Union authorize withdrawal of its funds?
>
> . . . .

Whether as a matter of property law the court correctly thought that title to portions of the funds in the Local's bank account resided with the District Council and the International is beside the point.[3] Lawton

following colloquy took place outside the jury's presence:

> [DEFENSE COUNSEL]: Yes, Your Honor. I only—just so that the record is clear, Your Honor, we would—do contend that it is a jury question who the money belonged to and whether it belonged to the Local or the International or the Council, or all three—
>
> THE COURT: No dispute that it belonged to all three.
>
> [DEFENSE COUNSEL]: Well, I think there is a dispute.
>
> THE COURT: He took the money that belonged to the three branches on the representation that he would make distribution. He made distribution to himself.

was not indicted for embezzlement from all three labor bodies.

Because Lawton did not object on this ground in the district court, our review is for plain error. *See* Rule 52(b), Fed.R.Crim.P. Rule 52(b) requires that three conditions be satisfied. *See United States v. Olano,* —— U.S. ——, ——, 113 S.Ct. 1770, 1777, 123 L.Ed.2d 508 (1993). Lawton has met the first condition: there must "indeed be an 'error'." *Id.* Under the Fifth Amendment, the "infamous" crimes on which a defendant must stand trial are limited by the charges contained in the grand jury's indictment. The district court's embezzlement instructions, however, allowed the petit jury to convict Lawton of additional charges. *See, e.g., United States v. Miller,* 471 U.S. 130, 143, 105 S.Ct. 1811, 1818, 85 L.Ed.2d 99 (1985). The trial court's instructions thus violated the Grand Jury Clause just as surely as if the court had written additional charges onto the grand jury's "true bill." *See Stirone,* 361 U.S. at 217, 80 S.Ct. at 273. Still worse, the instructions allowed the jury to convict on the basis of conduct that, on the face of the evidence, did not amount to a violation of § 501(c). Section 501(c) penalizes embezzlement of a labor organization's funds only by someone who is an officer or employee, directly or indirectly, of that labor organization.

Lawton has satisfied the second requirement of Rule 52(b)—that the error be "plain," a term "synonymous with 'clear' or, equivalently, 'obvious.'" *Olano,* —— U.S. at ——, 113 S.Ct. at 1777. For more than a century, it has been settled that "after an indictment has been returned its charges may not be broadened through amendment except by the grand jury itself." *Stirone,* 361 U.S. at 215–16, 80 S.Ct. at 272 (*citing Ex parte Bain,* 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887)). The indictment clearly charged Lawton with embezzlement only from the Local. The court's instructions just as clearly outlined a substantially broader field of potential criminality. That Lawton's counsel failed to point out the court's mistake in the heat of trial makes the error no less plain.

Rule 52(b)'s third condition is that the plain error "affect[ ] substantial rights." Rule 52(b), Fed.R.Crim.P. "[I]n most cases [this] means that the error must have been prejudicial: It must have affected the outcome of the District Court proceedings." *Olano,* —— U.S. at ——, 113 S.Ct. at 1778. Rule 52(b) is written in permissive, rather than mandatory, terms. Plain errors, under the rule, "may"—not must—"be noticed." Only plain errors that "seriously affect the fairness, integrity, or public reputation of judicial proceedings" normally qualify. *United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936). This is a rigorous standard, *see, e.g., United States v. Dawson,* 990 F.2d 1314, 1316–17 (D.C.Cir.1993), but Lawton has met it. *Cf. Stirone,* 361 U.S. at 217–18, 80 S.Ct. at 273–74.

There is the distinct possibility that the jury convicted Lawton on the basis that he embezzled money belonging to the International. If this occurred, Lawton stands convicted under § 501(c) for conduct the provision does not make a federal criminal offense. By anyone's lights, that is prejudicial.

Furthermore, with the assent of the prosecution and the defense, the district court instructed the jury that "authorization" was a complete affirmative defense for all of the charges Lawton faced.[4] A special verdict

---

.... [DEFENSE COUNSEL]: Yes, but nevertheless we would state for the record that it is our position that that's a jury question and that's why we would object to that. ...

THE COURT: All right, it stands.

The government does not suggest that the soundness of the district court's property law ruling affects the gravity of the constructive amendment error, and we therefore refrain from examining that ruling further.

4. The government now claims that this was incorrect, that authorization is only one factor to be taken into account in determining fraudulent intent under § 501(c), and that the government at any rate does not have the burden of showing lack of authorization. In light of our disposition of Lawton's appeal and the government's failure to make this argument in the district court, this is not a proper occasion to resolve the questions thus presented.

The authorities agree that an actor's subjective good faith belief of authorization is an absolute defense to the *state* statutory crime of embezzlement because it directly negates the specific fraudulent intent element of embezzlement. *See,*

form asked the jury whether each of the three union bodies authorized the defendant "to write union checks to his order." The court explained to the jury: "If you find after considering these circumstances that each branch of the AFSCME union ... authorized the defendant to draw checks to himself, then you should acquit him." The jury determined in its special verdict that Lawton's check writing was authorized by the Local, but not by the other two AFSCME bodies. In other words, the owner of the only property the indictment charged Lawton with embezzling had authorized his taking of its money. In view of the instructions on authorization (*see supra* note 4), the court's constructive amendment of the indictment appears to have been outcome-determinative.

Herman Lawton, Jr.'s convictions on the embezzlement counts are therefore reversed, and the case is remanded for further proceedings consistent with this opinion.

*e.g.*, 2 W. LaFave & A. Scott, Substantive Criminal Law § 8.6(f) (1986); 3 C. Torcia, Wharton's Criminal Law § 399 (14th ed. 1980). The courts of appeals appear divided on the application of such a principle to the federal labor embezzlement statute, § 501(c). *Compare, e.g., United States v. Stockton*, 788 F.2d 210, 216–17 (4th Cir.), *cert. denied*, 479 U.S. 840, 107 S.Ct. 147, 93 L.Ed.2d 89 (1986); *United States v. Silverman*, 430 F.2d 106, 126–27 (2d Cir.1970) (opinion of Friendly, J.), *cert. denied*, 402 U.S. 953, 91 S.Ct. 1619, 29 L.Ed.2d 123 (1971) *with, e.g., United States v. Floyd*, 882 F.2d 235, 239–41 (7th Cir. 1989). In the only previous case in this circuit interpreting § 501(c), *United States v. Boyle*, 482 F.2d 755, 764 (D.C.Cir.), *cert. denied*, 414 U.S. 1076, 94 S.Ct. 593, 38 L.Ed.2d 483 (1973), we held that authorization is not an affirmative defense when union property is converted for a plainly unlawful use.