Kerry J. JACKSON, Appellant,

v.

UNITED STATES, Appellee.

Sandra J. JACKSON, Appellant,

v.

UNITED STATES, Appellee.

Nos. 91–CF–507, 91–CF–802.

District of Columbia Court of Appeals.

Argued Jan. 19, 1993.
Decided Nov. 12, 1994.

---

M. Elizabeth Kent, appointed by the court, Washington, DC, for appellant Kerry J. Jackson, No. 91–CF–507.

Joshua F. Bowers, appointed by the court, Washington, DC, for appellant Sandra J. Jackson, No. 91–CF–802.

Steven N. Berk, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty. at the time the brief was filed, and John R. Fisher, Thomas C. Black, and Thomas J. Grucinski, Asst. U.S. Attys., Washington, DC, were on the brief, for appellee.

Before WAGNER, Chief Judge,* SULLIVAN, Associate Judge, and MACK, Senior Judge.

---

* Former *Chief Judge* ROGERS was a member of the division that heard oral argument in this case. After her departure from the court, *Associate* *Judge* WAGNER was selected by lot to replace her. *Judge* WAGNER's status changed to *Chief Judge* on June 14, 1994.

SULLIVAN, Associate Judge:

On October 12, 1989, an indictment was filed jointly charging appellant, Sandra J. Jackson, with second-degree murder while armed (D.C.Code §§ 22–2403, –3202 (1989)) and assault with a deadly weapon ("ADW") (D.C.Code § 22–502 (1989)); and appellant, Kerry J. Jackson, with second-degree murder while armed.[1] A jury acquitted both appellants of the murder charge, but convicted Sandra Jackson of ADW and Kerry Jackson of assault with intent to kill while armed ("AWIKWA") (D.C.Code § 22–501 (1989)).

In this consolidated appeal, appellant Sandra Jackson, argues that the trial court erred in denying her motion for severance. Appellant Kerry Jackson argues that the trial court erred by (1) refusing to dismiss the indictment following the death of a defense witness known to the prosecution but not disclosed to the defense after a specific Brady[2] request, and (2) instructing the jury on the charge of AWIKWA, which was not a lesser-included offense of the original indictment charge of second-degree murder.[3] We affirm the conviction of Sandra Jackson. As to appellant Kerry Jackson, we do not dwell at length upon his claim that the government's failure to disclose Brady information required dismissal of the indictment in view of the remedy provided by the trial court.[4] We also reject his contention that his conviction must be reversed because the trial court erroneously instructed the jury on the charge of the assault with intent to kill while armed.

I.

At trial, the government's evidence revealed that, in the early evening of August 12, 1989, the decedent Franklin Ball was standing in front of 1238 Wylie Street, N.E., "fussing" and "drinking." According to several witnesses, his "fussing" took the form of abusive and profane language directed at appellant Sandra Jackson, who was across the street on the porch of her home. After approximately an hour of this tirade, Mr. Ball crossed the street toward Ms. Jackson carrying a beer bottle. Ms. Jackson, in turn, came down from the porch, walked into the street and confronted Mr. Ball with a small knife in her hand. During the argument that ensued, Ms. Jackson cut Mr. Ball on the wrist with the knife and quickly retreated inside her house.

---

1. Also indicted were Joe Davis, Vernon Holloway and Curtis Nero. Mr. Davis was charged and ultimately acquitted of murder in the second degree and possession of a firearm during a crime of violence. Mr. Holloway was charged with assault with a deadly weapon, a knife, which was ultimately dismissed in a separate action. Codefendant Curtis Nero, charged with second-degree murder, filed a motion for a mistrial which was granted.

2. See Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

3. Appellant's third claim that the charge of AWIKWA was unsupported by the evidence is meritless.

4. We do note, however, that all five codefendants filed a joint Motion to Compel pursuant to Super.Ct.Crim.R. 16 and Brady. Specifically, the codefendants requested "any and all photo spreads shown to witnesses" and "non identification by any witnesses of any defendant." In the government's response, "[c]oncerning defendants' specific Brady requests" they stated, inter alia, that "all photo spreads have been shown to counsel ... there is no Brady information concerning the identification of any defendant." This statement proved to be false.

We also note that within two days of the murder, the police questioned Mr. Jose Garcia, a college-educated investment analyst, who witnessed the murder. When shown a photo array by the police that included a photo of appellant Kerry Jackson, Mr. Garcia was unable to identify anyone as the assailant. In fact, when queried whether the assailant was six feet, six inches tall and light-skinned (Kerry Jackson's description), Mr. Garcia responded that the assailant was only five feet, eight inches tall and dark-skinned. On November 2, 1990, Mr. Garcia died of a terminal illness.

On appellant's motion to dismiss, based in part on the government's failure to comply with Brady, the trial court characterized Mr. Garcia's potential testimony as a "non identification," and held that the government's failure to disclose Mr. Garcia's identity constituted a violation under Brady. However, the court held that the violation did not warrant dismissal of the indictment, but rather could be "cured" by requiring the parties to enter into a stipulation setting forth the testimony of Mr. Garcia, which was then read to the jury.

The government wisely conceded in oral argument that, by failing to reveal the identity of a potentially important exculpatory witness, it violated both the letter and the spirit of Brady.

This altercation only intensified Mr. Ball's stream of invectives. Ms. Jackson soon returned to her porch with her husband, Mr. Joe Davis, and her son, Kerry Jackson, who was holding a knife estimated to be twelve to fourteen inches long. Moments later, the trio began to chase Mr. Ball through the 1200 block of Wylie Street. Kerry Jackson was carrying his long "shiny" knife, Sandra Jackson was carrying her small knife, and Joe Davis was carrying a handgun. In an attempt to escape, Mr. Ball weaved in and out of the parked cars, stumbling repeatedly. He was finally caught by his pursuers, now joined by Mr. Curtis Nero, after he fell in front of 1247 Wylie Street. There Mr. Nero held him from behind while Kerry Jackson stabbed him in the chest. When his attackers retreated, Mr. Ball, bleeding profusely, arose and stumbled into a nearby vacant lot. While Mr. Ball was lying unconscious, Kerry Jackson walked over to Mr. Ball and kicked him several times in the head in an apparent attempt to determine if he was alive or dead. Mr. Ball died shortly thereafter.

## II.

### Sandra Jackson—Severance

■ Codefendants may be tried together "if they are alleged to have participated in the same act or transactions constituting an offense or offenses." D.C.Code § 23–311 (1991). By allowing the trial court "wide latitude in determining whether to grant or deny a motion for severance," *King v. United States,* 550 A.2d 348, 352 (D.C.1988), we accord a "strong presumption" that "two defendants [when] charged with jointly committing a criminal offense" will be jointly tried. *Ingram v. United States,* 592 A.2d 992, 996 (D.C.), *cert. denied,* 502 U.S. 1017, 112 S.Ct. 667, 116 L.Ed.2d 757 (1991).[5] This presumption may be rebutted where (1) there are "'irreconcilable defenses so that the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty.'" *Johnson v. United States,* 398 A.2d 354, 368 (D.C. 1979) (quoting *Rhone v. United States,* 125 U.S.App.D.C. 47, 48, 365 F.2d 980, 981

(1966)), (2) one codefendant is seeking to call a codefendant as an exculpatory witness, *id.* at 367–68, or (3) where the evidence against one of the parties is *de minimis. Russell v. United States,* 586 A.2d 695, 698 (D.C.1991). Not only do none of these exceptions apply here, but also considering the undisputed testimony that Ms. Jackson cut Mr. Ball on the wrist, coupled with the jury's acquitting each of the defendants of murder, we are unpersuaded by appellant's argument that her conviction of assault with a deadly weapon was a result of the jury being "inflamed by evidence of the cruel murder."

### Kerry Jackson—Lesser–Included Offense

■ We reject appellant Kerry Jackson's argument that reversal is required because he was convicted of the offense of assault to kill while armed, an offense not charged in the indictment. While recognizing the basic right protected by the rule against permitting a defendant to be tried on charges not returned by the grand jury, *see Stirone v. United States,* 361 U.S. 212, 217, 80 S.Ct. 270, 273, 4 L.Ed.2d 252 (1960), we are persuaded that no plain error occurred. *See Robinson v. United States,* 649 A.2d 584 (D.C.1994); *cf. Cash v. United States,* 648 A.2d 964, 965 (D.C.1994) (per curiam) (reversible error where trial court erroneously instructed jury on misdemeanor offense of simple possession of controlled substance, instead of felony possession with intent to distribute controlled substance, and jury convicted defendant of felony offense).

A brief review of the facts will facilitate an understanding of the conclusion reached. Appellant was indicted for second-degree murder while armed. He requested a "lesser included offense" instruction of simple assault on the theory that he had admitted to the police that he had a fist fight with the decedent earlier during the evening of the murder. Prior to closing argument, appellant's counsel accepted the court's proposal to instruct on assault with intent to kill while armed, acknowledging that she planned to

---

5. Moreover, "this court will only reverse upon a showing of an abuse of discretion." *Sousa v. United States,* 400 A.2d 1036, 1041 (D.C.), *cert.*

*denied,* 444 U.S. 981, 100 S.Ct. 485, 62 L.Ed.2d 408 (1979).

argue appellant's case on that theory, *inter alia.* The jury found appellant not guilty of second-degree murder while armed, but returned a verdict of guilty of assault with intent to kill while armed. On appeal, appellant contends that reversal is required because assault with intent to kill is not a lesser-included offense of second-degree murder and because there was no evidentiary support for the instruction. These arguments must be rejected.

■■■■ It is a principle of long standing in this jurisdiction that a conviction will not be reversed because of an improper jury instruction, *not objected to at trial,* unless the instruction to the jury rises to the level of "plain error." *See Williams v. United States,* 551 A.2d 1353, 1355 (D.C.1989); *Deneal v. United States,* 551 A.2d 1312, 1316–17 (D.C.1988); *Green v. United States,* 544 A.2d 714, 715 (D.C.1988); *Shivers v. United States,* 533 A.2d 258, 261 (D.C.1987); *Allen v. United States,* 495 A.2d 1145, 1151–54 (D.C. 1985) (en banc). If the decision not to object can be viewed as a tactical choice, it should not be considered plain error. *Allen, supra,* 495 A.2d at 1152 (citing *Jones v. United States,* 477 A.2d 231, 242 (D.C.1984)); *Bennett v. United States,* 375 A.2d 499, 504 (D.C. 1977). An appellant is bound by the position taken by trial counsel and should not be allowed to reverse a position taken at trial "in order to disavow the implications that flow from it." *See Parks v. United States,* 627 A.2d 1, 10 (D.C.1993) (citing *Mitchell v. United States,* 569 A.2d 177, 180 (D.C.), *cert. denied,* 498 U.S. 986 (1990)); *Byrd v. United States,* 502 A.2d 451, 452–53 (D.C.1985).

After requesting a lesser-included instruction on the offense of simple assault, appellant accepted the trial court's proposed instructions on a number of other offenses, including assault with intent to kill while armed. This was not a hasty decision made in the heat of the trial, for the record reveals that trial counsel had *at least* an overnight recess to consider the proposed instructions.

Having taken that tactical position in the trial court, it is questionable whether appellant can now impeach the jury's verdict. *See Parks, supra,* 627 A.2d at 10; *Byrd, supra,* 502 A.2d at 453; *Allen, supra,* 495 A.2d at 1151–52; *Bennett, supra,* 375 A.2d at 503–04.

Assuming *arguendo* that despite his trial tactics, appellant has not waived his right to impeach the jury's verdict, no plain error rising to the level of a miscarriage of justice occurred here. Appellant's indictment for second-degree murder while armed provided him with ample advance notice that he had to defend against the government's evidence of "malice aforethought," which, in this jurisdiction, denotes three types of murder, each accompanied by a distinct mental state.[6] *See Comber v. United States, supra,* note 6, 584 A.2d at 38. Malice has been defined by this court as (1) specific intent to kill, (2) specific intent to inflict serious bodily injury, or (3) wanton and willful disregard of an extreme risk of death or serious bodily injury. *Id.* at 38–39. Proving the intent sufficient for a conviction of assault to kill while armed requires the government to establish evidence of specific "intent to kill." D.C.Code § 22–501 (1989); *see Logan v. United States,* 483 A.2d 664, 672 (D.C.1984). In proving malice, the government need not elect prior to trial one type of malicious conduct over the others. Thus, an indictment charging appellant with second-degree murder while armed provided appellant with ample notice of its intention to prove malice on any one of the theories, including "specific intent to kill."

At trial, the government sought to prove "malice aforethought" by introducing evidence tending to show that appellant committed the offense of second-degree murder while armed with *the specific intent to kill.* Thus, appellant had notice of the offense for which he was convicted.[7] In this case, no impermissible expansion of the indictment occurred. *Compare United States v. Lawton,* 301 U.S.App.D.C. 390, 995 F.2d 290

---

6. "Historically, a fourth kind of malice existed when a killing occurred in the course of the intentional commission of a felony." *Comber v. United States,* 584 A.2d 26, 39 (D.C.1990) (en banc).

7. We need not consider whether assault with intent to kill is a lesser-included offense of second-degree murder. Our comparison of the elements of the two offenses is for the purpose of undertaking a plain error analysis.

(1993). The element of specific intent, the critical one involved here, was within the charge in the indictment, and the government proceeded on this theory to prove this element of malice required for second-degree murder while armed. The evidence was clearly sufficient to support an instruction for assault with intent to kill. Under the circumstances, the rigorous standard for demonstrating plain error has not been met.

For the foregoing reasons, appellants' convictions hereby are affirmed.

*So ordered.*

MACK, Senior Judge, concurring in part and dissenting in part:

While I concur in the affirmance of the conviction of Sandra Jackson for the reasons stated by the majority, I would reverse the conviction of Kerry Jackson on the grounds that he has been deprived of a Fifth Amendment right to be answerable only to a charge levied by a grand jury.

The issue posed by Mr. Jackson is not the simple one of instructional error or the implications flowing from defense counsel's failure to object thereto. The issue rather is whether any defendant can be convicted of a felony distinct from that charged by the grand jury.

Once we admit (as did the government) that AWIKWA is not a lesser-included offense of second-degree murder while armed, we concede that there is error. With that concession, conceptually speaking, it is difficult to conceive how this specific error could be anything other than plain error. The lack of plain error in the traditional instructional context, other factors being equal, is based upon the failure of defense counsel to meet the duty of objecting. Under the circumstances here, however, it was the duty not only of defense counsel, but also of the prosecutor, to bring the error to the trial court's attention. Indeed, it could be argued that the prosecutor bore an even greater duty in this respect, since the government is closer to the grand jury process which results in indictments. *See United States v. Lawton,* 301 U.S.App.D.C. 390, 394, 995 F.2d 290, 294 (1993) (quoting *United States v. Atkinson,* 297 U.S. 157, 160; 56 S.Ct. 391, 392, 80 L.Ed.

555 (1936)) (errors that "seriously affect the fairness, integrity, or public reputation of judicial proceedings" normally qualify as plain error).

## I.

The grand jury indictment against appellant charged:

> Kerry Jackson, also known as Pee Wee, ... while armed with a dangerous weapon, that is a knife, and with malice aforethought, killed Franklin Ball by stabbing him with a knife on or about August 12, 1989, thereby causing injuries from which Franklin Ball died on or about August 13, 1989. (Second Degree Murder While Armed, in violation of 22 D.C.Code, Section 2403, 3202).

At the close of appellant's case at trial, appellant's counsel requested the charge of *simple assault* on the theory that appellant had made a statement to the police upon his arrest admitting that he had previously been involved in a fist fight with the decedent. The trial court suggested:

> Then for you I will go in one extreme or the other. Murder two, voluntary manslaughter, assault with a deadly weapon, simple assault, because the evidence would support each and every one in a chain of permutations.

The court then suggested that an instruction on the charge of assault with intent to kill may be appropriate:

> In looking at it, should assault with intent to kill also be there as part of the rundown to simple assault? The problem is, you can't get from X to Y without going all the way through, or A to Z, without stepping on each stone in between.

Shortly thereafter, the court charged the jury:

> The essential elements of the offense of assault with intent to kill while armed, each of which the Government must prove beyond a reasonable doubt, are that the defendant made an assault on the com-

plainant, and that he did so with specific intent to kill the complainant.[1]

An assault is an intent or effort with force or violence to do injury to the person of another coupled with the apparent present ability to carry out such an attempt or effort.

\* \* \* \* \* \*

The intent which is essential—which is an essential element of the offense of assault with intent to kill or the intent not merely to do the acts which constitute the assault but also the specific intent to cause death.

## II.

Super.Ct.Crim.R. 31(c) provides that "a defendant may be found guilty of an offense necessarily included in the offense charged." To be deemed an included offense, "it [must be] impossible to commit the greater without first having committed the lesser." *Schmuck v. United States*, 489 U.S. 705, 716, 109 S.Ct. 1443, 1450, 103 L.Ed.2d 734 (1989).[2] *See also Walker v. United States*, 617 A.2d 525, 527 & n. 2 (D.C.1992) ("[a] defendant is not entitled to a lesser-included instruction unless all of the elements of the lesser offense are included within the offense charged") (citing *Rease v. United States*, 403 A.2d 322, 328 (D.C. 1979)); *Byrd v. United States*, 598 A.2d 386, 389 n. 5 (D.C.1991) (en banc); *Norris, supra* note 2, 585 A.2d at 1374 n. 3.

The crime of second-degree murder is codified at D.C.Code § 22–2403 (1989), which provides: "Whoever with malice aforethought . . . kills another, is guilty of murder in the second degree." This court has recognized that "malice aforethought" denotes several types of murder, each accompanied by distinct mental states. *See Comber v. United States*, 584 A.2d 26, 38 (D.C.1990) (en banc). Specifically, malice is disjunctively defined as (1) "the specific intent to kill," *or* (2) "the specific intent to inflict serious bodily harm," *or* (3) "wanton and willful disregard of an unreasonable human risk." *Id.* at 38–39 (citations omitted). Unlike second-degree murder, assault with intent to kill requires that guilt be bottomed on a finding of only *one* mental state, *i.e.*, a specific intent to kill. *See Gray v. United States*, 585 A.2d 164 (D.C. 1991); *United States v. Martin*, 154 U.S.App. D.C. 359, 362, 475 F.2d 943, 946 (1973).[3] Because a "specific intent to kill" fits the definition of only one of the three possible mental states underlying second-degree murder, AWIKWA cannot be deemed "*necessarily* included in Murder II."[4]

## III.

The Grand Jury Clause of the Fifth Amendment states: "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." As a charging instrument, an indictment offers three fundamental protections to the accused: (1) it informs the accused of the charges to allow adequate preparation of a defense; (2) it describes the crime with sufficient specificity to enable a defendant to protect against future jeopardy for the same offense; and (3) it assures that neither the prosecutor nor the court alters the charge to fit the proof. *See*

1. *See* CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 4.14 (3d ed. 1978).

2. "In *Schmuck* . . . the United States Supreme Court rejected a fact based, inherent relationship analysis and specifically adopted the traditional elements approach." *Norris v. United States*, 585 A.2d 1372, 1374 n. 3 (D.C.1991). The "inherent relationship" test for identifying lesser-included offenses focuses on the evidence adduced at trial in addition to the abstract elements of the offenses in determining whether one offense is a lesser-included offense of another. Under this scheme, one offense is to be included in another where the two offenses (1) relate to the protection of the same interests; and (2) are so related · that in the general nature of these crimes, though not necessarily invariably, proof of the lesser offense is necessarily presented as part of the

showing of the commission of the greater offense. *See Government of the Virgin Islands v. Joseph*, 765 F.2d 394, 397 n. 4 (3d Cir.1985); *United States v. Johnson*, 637 F.2d 1224, 1236 (9th Cir.1980); *United States v. Pino*, 606 F.2d 908, 916 (10th Cir.1979); *United States v. Whitaker*, 144 U.S.App.D.C. 344, 348–49, 447 F.2d 314, 318–19 (1977).

3. D.C.Code § 22–501 (1989) provides, in part, that "[e]very person convicted of any assault *with intent to kill* . . . shall be sentenced to imprisonment for not less than 2 years or more than 15 years." (Emphasis added.)

4. *See Logan v. United States*, 483 A.2d 664, 671 (D.C.1984) ("[m]alice . . . need not entail a specific intent to cause death").

*(Oliver) Johnson v. United States,* 613 A.2d 1381, 1384 (D.C.1992); *Ingram v. United States,* 592 A.2d 992, 1005 (D.C.1991); *Wright v. United States,* 564 A.2d 734, 737 (D.C.1989); *Scutchings v. United States,* 509 A.2d 634, 636 (D.C.1986). "In short, 'a conviction must be based on an offense proved at trial and fully alleged in the indictment.'" *Ingram, supra,* 592 A.2d at 1005 (quoting *Scutchings, supra,* 509 A.2d at 637).

Modifications of the charges contained in a grand jury indictment are manifested in two forms: amendments or variances.

> An *amendment* of the indictment occurs when the charging terms of the indictment are altered, either literally or in effect, by prosecutor or court after the grand jury has last passed upon them. A *variance* occurs when the charging terms of an indictment are left unaltered, but the evidence at trial proves facts materially different from those alleged in the indictment.[5]

*Scutchings, supra,* 509 A.2d at 636 (quoting *Gaither v. United States,* 134 U.S.App.D.C. 154, 164, 413 F.2d 1061, 1071 (1969)). An amendment is considered *per se* prejudicial and warrants reversal of a conviction. *Ex parte Bain,* 121 U.S. 1, 7, 7 S.Ct. 781, 784, 30 L.Ed. 849 (1887). The Supreme Court, acknowledging the damaging effect of modifications to the charges issued by a grand jury, declared:

> If it lies within the province of a court to change the charging part of an indictment to suit its own notions of what it ought to have been, or what the grand jury would probably have made it if their attention had been called to suggested changes, the great importance which the common law attaches to an indictment by a grand jury, as a prerequisite to a prisoner's trial for a crime, and without which the Constitution says "no person shall be held to answer," may be frittered away until its value is almost destroyed.

*Id.* at 10, 7 S.Ct. at 786. *See also Russell v. United States,* 369 U.S. 749, 770, 82 S.Ct.

1038, 1050, 8 L.Ed.2d 240 (1962) ("The underlying principle is reflected by the settled rule ... that an indictment may not be amended except by resubmission to the grand jury, unless the change is merely a matter of form."); *Stirone, supra* note 5, 361 U.S. at 217, 80 S.Ct. at 273 ("a court cannot permit a defendant to be tried on charges that are not made in the indictment against him"); *(Oliver) Johnson, supra,* 613 A.2d at 1384; *Ingram, supra,* 592 A.2d at 1005. Alternatively, a variance "requires reversal only upon a showing of prejudice," *(Oliver) Johnson, supra,* 613 A.2d at 1385 (citations omitted), while "[a] conviction [under a constructive amendment] will be reversed only if the evidence introduced at trial and the judge's instructions to the jury 'raise the "substantial likelihood" that appellant may have been convicted of a crime different from that charged by the grand jury.'" *(Michael) Johnson v. United States,* 616 A.2d 1216, 1232 (D.C.1992) (quoting *Barker v. United States,* 373 A.2d 1215, 1219 (D.C.1977)). An amendment to an indictment directly infringes on the Fifth Amendment right to be held answerable for a charge only when "levied through the protective device of a grand jury." *United States v. Ford,* 872 F.2d 1231, 1235 (6th Cir.1989). Here, the jury instruction and verdict "literally altered the charging terms of the indictment" and thus constituted such an impermissible amendment.

The government's fallback position is that, notwithstanding the discrepancy between the indictment and the verdict, appellant's failure to object at trial to the trial court's instruction renders him subject to our review under the "plain error" doctrine. Under that doctrine's demanding stricture, this court is authorized to correct only "particularly egregious" errors, *United States v. Frady,* 456 U.S. 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982); *Doe v. United States,* 583 A.2d 670, 676 (D.C.1990), which "jeopardize the very fairness and integrity of the trial," *Watts v. United States,* 362 A.2d 706, 709 (D.C.1976) (en banc), and result in a

---

**5.** A hybrid of the two is the "constructive amendment." *See Stirone v. United States,* 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960). Under this doctrine, "[a] variance becomes a constructive amendment ... when 'facts introduced at trial go to an essential element of the offense

charged, and the facts are different from the facts that would support the offense charged in the indictment.'" *Scutchings, supra,* 509 A.2d at 637 (quoting *Giles v. United States,* 472 A.2d 881, 883 (D.C.1984)).

"miscarriage of justice." *Harris v. United States,* 602 A.2d 154, 159 (D.C.1992). Whether in any given instance the unpreserved error will be of sufficient dimension to result in a miscarriage of justice, and thus constitute plain error, is a question to be determined on a case-by-case basis. *See Harris, supra,* 602 A.2d at 159 n. 6 (citing *United States v. Young,* 470 U.S. 1, 16 n. 14, 105 S.Ct. 1038, 1047 n. 14, 84 L.Ed.2d 1 (1985)).

Here, the trial court's instruction to the jury on AWIKWA falls within the plain error doctrine. *See Gaither, supra,* 134 U.S.App. D.C. at 165, 413 F.2d at 1072 ("Because the leading amendment case of *Ex parte Bain* rested explicitly upon the Constitution, and because it apparently excludes any notion of a non-prejudicial amendment to the indictment, the concept of harmless error has not been applied to amendments."); *United States v. Lawton, supra,* 301 U.S.App.D.C. at 394, 995 F.2d at 294. The discrepancy between the indictment and the verdict, facilitated by the court's instruction, "destroyed the defendant's substantial right to be tried only on charges presented in an indictment returned by a grand jury," *Stirone, supra,* 361 U.S. at 217, 80 S.Ct. at 273, and therefore, is cause for reversal.

I respectfully dissent.